233 S.E.2d 562 (1977)
292 N.C. 379
In re Inquiry Concerning a Judge No. 35, George Z. STUHL.
No. 44.
Supreme Court of North Carolina.
April 14, 1977.
*563 (Judicial Standards Commission) Millard R. Rich, Jr., Deputy Atty. Gen., Raleigh, for appellant.
L. Sneed High, Fayetteville, for appellee.

ORDER OF CENSURE
EXUM, Justice.
This matter is before the Supreme Court upon the recommendation of the Judicial Standards Commission (Commission), filed with this Court on 30 December 1976, that Judge George Z. Stuhl, Judge of the General Court of Justice, District Court Division, Twelfth Judicial District (respondent), be censured for willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute. See Article IV, section 17(2) of the North Carolina Constitution and G.S. 7A-376 (1975 Cum.Supp.). Respondent George Z. Stuhl did not petition this Court for a hearing upon the censure recommendation, thereby waiving the right to file a brief and to be heard on oral argument. Rule 2, Rules for Supreme Court Review of Recommendations of the Judicial Standards Commission, 288 N.C. 740.
Having considered the record consisting of the verified complaint and answer filed with, the evidence heard by, the findings of fact, conclusions, and recommendations made by the Judicial Standards Commission, we take note of the proceedings and findings and, based thereon, make our conclusions of law and order of censure:

PROCEEDINGS BEFORE THE COMMISSION
1. This proceeding was instituted before the Commission by the filing of a verified complaint on 29 June 1976 which alleged that respondent had engaged in willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute in that:
(a) The respondent George Z. Stuhl presided over District Court No. 5 in Cumberland County on 13 November 1975 and on that date personally entered a verdict of guilty and a judgment of "Prayer for Judgment Continued" on payment of costs in a criminal action, No. 75-CR-36358, against Fay Victor Parrous wherein said Parrous was charged with unlawfully and willfully operating a motor vehicle on a street or highway at a speed of 60 miles per hour in a 45 mile-per-hour zone on 2 November 1975. At the time respondent entered said verdict and judgment, Fay Victor Parrous was not present in court and was not represented by an attorney. Said case was not on the court calendar on 13 November 1975. At the end of court on said date at approximately 1 p. m., respondent picked up the court file (shuck) in which he had rendered the verdict and judgment above set out and took said file to the cashier's window of the Clerk of Superior Court in the hallway outside the courtroom and paid $25 to a cashier. The cashier issued *564 to respondent, in the name of Fay Victor Parrous, receipt No. 981688 for $25 and it was signed by Ailene Smith.
(b) On 29 October 1975 Dr. Panagiotis Elias Darviris was issued a citation by Traffic Officer J. P. Croome charging Dr. Darviris with willfully and unlawfully passing in a no-passing zone while driving a motor vehicle on a public street or highway. That citation, No. C2052881, directed Dr. Darviris to appear in District Court No. 5 at 9 a. m. on 12 November 1975. The case was continued until 10 December 1975. Sometime after issuing the citation and prior to 10 December 1975, respondent asked Officer Croome in the courthouse hallway near District Court No. 5 if Croome would reconsider the charge made against Dr. Darviris and give the doctor a break, stating that Greek people in Fayetteville wanted to help the doctor and the Greek Orthodox Church would not look too favorably on respondent if respondent did not give Dr. Darviris a break. Officer Croome advised respondent that he was the judge and could do what he wanted to do. Officer Croome never had any further contact with any lawyer, the defendant, the district attorney or any assistant district attorney relative to the charge against Dr. Darviris; and Officer Croome never appeared in court relative to said case. Dr. Darviris never appeared in district court for a disposition of the charge made against him by Officer Croome and did not employ an attorney or anyone else to represent him in said case. On 10 December 1975 respondent asked Assistant District Attorney Willie A. Swann, who was prosecuting the docket in District Court No. 5 over which respondent was presiding, to take a dismissal in the case against Dr. Darviris but Swann did not do so. District Attorney Edward W. Grannis did not authorize the entry of dismissal in the criminal action against Dr. Darviris. Nevertheless, on or about 10 December 1975 respondent entered a plea of not guilty and a judgment of not guilty with the notation "no evidence" on the traffic citation No. C2052881. At that time Dr. Darviris was not present in court, no one was present representing the doctor, and neither the district attorney nor any assistant district attorney had knowledge of said entry of plea and judgment.
(c) On or about 3 December 1975 Henry Mitchell Colvin was charged by Highway Patrolman Mike Robertson with willfully and unlawfully driving a motor vehicle on a public highway at a speed of 65 miles per hour in a 55 mile-per-hour zone and issued Citation No. 2039560 to Colvin with a notation to appear in Cumberland County District Court No. 5 at 9 a. m. on 15 January 1976. On or about 16 December 1975 respondent caused to be entered a check mark in the "Guilty Plea" block on said citation and a check mark in the "Guilty Verdict" block on said citation. At the time of those entries the case was not on the court calendar for trial. Assistant District Attorney Willie A. Swann, who was prosecuting the docket in District Court No. 5 in December 1975, did not consent to or have knowledge of the entries. Said entries were made by Clerk of Court Cashier Sue Faircloth at the direction of respondent and Faircloth wrote out a receipt for the payment of said costs in said case at the direction of the respondent. While an attorney and before becoming a district court judge, respondent had represented Henry Colvin in the district courts of Cumberland County on charges of issuing worthless checks and on charges involving traffic violations.
(d) On 15 August 1975 Lindsey Anthony Antis was charged in Uniform Traffic Citation No. 1762839, issued by Patrolman Kent Pierce, with a willful and unlawful operation of a motor vehicle on a public street or highway while under the influence of intoxicating liquor and with operating said vehicle at a speed of 69 miles per hour in a 55 mile-per-hour zone. The citation ordered Antis to appear in Cumberland County District Court No. 5 at 9 a. m. on 16 September 1975. Shortly after the arrest of Antis a Breathalyzer *565 test was administered to him by Trooper Gerald Morton and the test indicated that Antis had a blood alcohol content of .15 percent. The case came on for trial before respondent on 13 November 1975. The State was represented by Assistant District Attorney Willie Swann and Antis was represented by Attorney Doran Berry. The prosecutor reduced the charge of driving under the influence to a violation of G.S. 20-138(b) to which defendant pled not guilty. He also pled not guilty to the speeding charge. Respondent, in open court, found Antis guilty of violating G.S. 20-138(b) and guilty of speeding 69 miles per hour in a 55 mile-per-hour zone. The charges of driving with a .10 percent blood alcohol content and speeding were combined for judgment and defendant Antis was given a six-month sentence suspended on condition that he pay a fine of $150 and court costs, and his driver's license was suspended for one year. Judgment was entered accordingly. Prosecutor Swann never again appeared in District Court No. 5 in connection with the charges against Antis. Nevertheless, on or about 17 November 1975, the respondent, out of the presence and without the knowledge or consent of the district attorney or any assistant district attorney, vacated the judgment against Antis above described and entered a judgment of guilty of careless and reckless driving.
(e) On several occasions prior to 16 January 1976, respondent, while serving as a district court judge, appeared at the cashier's window in the clerk's office with the official papers in criminal cases and directed employee Frances Fisher to enter prayer for judgment continued in various cases, which she did, and respondent then signed the judgment and paid the costs and received the clerk's receipt in the name of the defendant. While serving as a district court judge respondent has done the same thing in other criminal actions and caused employee Joan Graham to issue receipts in the name of the defendant in such cases after the fines were paid by respondent. Likewise, in several cases in 1975, the respondent, while serving as a district court judge, caused the clerk's employee Sue Fisher Faircloth to issue receipts after respondent paid costs of court on traffic citations at the cashier's window of the clerk's office. Respondent paid costs in such manner in traffic citations on an average of once or twice a week in 1975 to Sue Fisher Faircloth after she, at respondent's direction, had entered a plea of guilty and verdict of guilty, followed by the words "Prayers for Judgment Continued upon Payment of Cost."
2. Respondent filed a verified answer admitting the allegations of the complaint concerning Fay Victor Parrous (Case No. 75-CR-36358), admitting only the harmless allegations concerning Dr. Darviris (Citation No. C2052881), admitting all allegations concerning Henry Mitchell Colvin (Citation No. 2039560), except the allegation that respondent had represented him on worthless check and traffic charges prior to becoming a judge, admitting in the Lindsey Anthony Antis case (Citation No. 1762839) that he found said defendant guilty in open court of violating G.S. 20-138(b) and guilty of speeding 69 miles per hour in a 55 mile-per-hour zone and entered judgment accordingly. All other allegations of the complaint were denied.
3. Upon due notice respondent was accorded a full adversary hearing before the Commission on 14 October 1976 at which time he was represented by counsel, testified in his own behalf, and offered other evidence. After hearing all evidence offered in support of the allegations, the Commission made findings as hereinafter appear:
FINDINGS OF FACT
(a) That a written complaint was filed by a citizen of North Carolina with the Commission concerning the misconduct of respondent who was and is a Judge of the General Court of Justice, District Court Division, Twelfth Judicial District of North Carolina.
(b) That thereupon the Commission caused a preliminary investigation to be conducted by agents of the State Bureau *566 of Investigation in accordance with the provisions of Rule 7 of the Commission Rules, who filed written reports with the Commission; that respondent was notified in writing in apt time of the investigation, the nature of the charge, by notice dated 30 June 1976, which notice informed him that the charges alleged against him were willful misconduct in office and conduct prejudicial to the administration of justice which brings the Judicial Office into disrepute and that attached to said notice was a copy of the verified complaint.
(c) That the verified complaint together with the notice were duly served on respondent on 1 July 1976 by service on Mr. Sneed High, counsel for respondent. Thereafter, and in apt time, respondent filed a verified answer to said complaint.
(d) That respondent was duly notified that the Commission would convene a hearing into said matter in the Conference Room of the Council of the North Carolina State Bar, Inc., Law Building, 107 Fayetteville Street, Raleigh, N. C. 27602, at 2 p. m. on Thursday, 14 October 1976, and said notice was duly served on respondent by service on his counsel, Mr. Sneed High.
(e) That at the time and place set for said hearing, with all members of the Judicial Standards Commission being present, respondent was present in person and represented by counsel whose name appears hereinabove.
(f) That Special Counsel for the Judicial Standards Commission at said hearing was William W. Melvin, Deputy Attorney General.
(g) That respondent presided over District Court No. 5 in Cumberland County on 13 November 1975. That on said date respondent personally entered a verdict of guilty and a judgment of "Prayer for Judgment Continued" on payment of costs, in a criminal action, No. 75-CR-36358, against Fay Victor Parrous, 1802 Morganton Road, Fayetteville, N. C., wherein Fay Victor Parrous was charged with unlawfully and willfully operating a motor vehicle on a street or highway at a speed of 60 miles per hour in a 45 mile-per-hour zone on 2 November 1975.
That at the time respondent entered said verdict and judgment, Fay Victor Parrous was not present in court and was not represented by an attorney. Said case was not on the court calendar on 13 November 1975. That at the end of the court on said day, at around 1 p. m., respondent picked up the court file (shuck) in which he had rendered the verdict and judgment hereinabove set out, and took said file to the cashier's window of the Clerk of Superior Court in the hallway outside the courtroom and paid $25 to the cashier.
That a cashier issued to respondent, in the name of Fay Victor Parrous, a receipt for $25, being Receipt No. 981688, and signed by Ailene Smith.
(h) That on 29 October 1975 Dr. Panagiotis Elias Darviris, P. O. Box 155, Stedman, North Carolina, was issued a citation by Traffic Officer J. P. Croome of the Fayetteville Police Department, charging Dr. Darviris with willfully and unlawfully passing in a no-passing zone while driving a motor vehicle on a public street or highway.
That Citation No. C2052881 was issued by Officer Croome and Dr. Darviris was directed to appear in District Court No. 5 on 12 November 1975, at 9 a. m. That said case was continued until 10 December 1975. That sometime after issuing the citation and prior to 10 December 1975, Officer Croome was in the Cumberland County Courthouse hallway near District Court No. 5 and was approached by respondent who asked Officer Croome if he would be willing to drop the charge against Dr. Darviris. Officer Croome told respondent he could do whatever he wanted to do with it.
On 12 November 1975 respondent asked Willie A. Swann, Assistant District Attorney who was prosecuting the criminal docket in Courtroom No. 5 over which respondent was presiding, to take a dismissal on the charge hereinabove set out against Dr. Darviris. Willie Swann did *567 not dismiss the charge, and District Attorney Edward W. Grannis did not authorize an entry of dismissal in the criminal action against Dr. Darviris.
(i) That Officer Croome, after talking with respondent as aforesaid, never had any further contact with any lawyer, the defendant or the district attorney or any assistant district attorney relative to the charge he had made against Dr. Darviris; that Croome never appeared in court relative to said case. That Dr. Darviris never appeared in court relative to said case. That Dr. Darviris never appeared in District Court of Cumberland County for a disposition of the charge made against him by Officer Croome nor did Dr. Darviris employ an attorney or anyone else to represent him in said case.
(j) That on or about 10 December 1975 respondent signed a judgment of not guilty in Citation No. C2052881 hereinabove described. That said citation was introduced in evidence as a portion of respondent's Exhibit A.
(k) That on or about 3 December 1975 Henry Mitchell Colvin, 1917 Sansberry, Fayetteville, North Carolina, was charged by State Highway Patrol Trooper Mike Robertson with willfully and unlawfully driving a motor vehicle on the public highways at a speed of 65 miles per hour in a 55 mile-per-hour zone.
That Trooper Robertson issued Citation No. 2039560 to Colvin with a notation to appear in Cumberland County District Court No. 5 on 5 January 1976 at 9 a. m. That on or about 16 December 1975 respondent caused to be entered a check mark in the "Guilty Plea" block on said citation and a check mark in the "Guilty Verdict" block on said citation.
That at the time of the entry of said judgment, said case was not on the court calendar for trial. That Assistant District Attorney Willie A. Swann, who was prosecuting the docket in District Court No. 5 in December 1975, did not consent to or have knowledge of the entry of said judgment.
That said judgment was entered by Clerk of Court Cashier Sue Faircloth at the direction of respondent, and Faircloth wrote out a receipt for a payment of said costs in said case at the direction of respondent. That respondent, while an attorney in private practice, prior to becoming a district court judge, had represented Henry Colvin in the District Courts of Cumberland County.
(1) That the Clerk of Superior Court of Cumberland County maintains a cashier's window on the first floor of the Cumberland County Courthouse directly opposite District Courtroom No. 5. That at said window an employee at the Clerk accepts payment of criminal costs and fines in waiveable offenses. That on numerous occasions the respondent has come to said window and handed to an employee of the Clerk's Office a citation in a criminal action and directed an employee of the Clerk, and particularly Frances Fisher Conyers and Sue Faircloth, who worked at said window, to enter a Prayer for Judgment Continued upon the payment of the cost and the respondent would, usually in the presence of the defendant in said action, hand to the Clerk's employee the cost in said action, accept a receipt in return made out to the defendant, and thereupon hand it to the defendant.
That there are five district court judges in the Twelfth District and that no other district court judge in said District has ever paid costs at said window or directed the Clerk's employee to enter Prayer for Judgment Continued at said window except respondent.
(m) That the aforesaid FINDINGS and this RECOMMENDATION were concurred in by five or more members of the Judicial Standards Commission.
Upon the foregoing findings of fact the Commission concluded as a matter of law that the conduct of respondent constituted willful misconduct in office and conduct prejudicial to the administration of justice which brings the Judicial Office into disrepute and recommended that respondent be *568 censured by the Supreme Court for such conduct.

CONCLUSIONS OF LAW AND ORDER OF CENSURE
The Supreme Court concludes that the Commission's findings of fact are supported by substantial evidence. We therefore accept the facts as established by the findings and apply the law accordingly.
G.S. 7A-376 (Cum.Supp.1975) provides, in pertinent part, as follows:
"Upon recommendation of the Commission, the Supreme Court may censure or remove any justice or judge for wilful misconduct in office, . . . or conduct prejudicial to the administration of justice that brings the judicial office into disrepute."
Willful misconduct in office denotes "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, dishonesty, or corruption, these elements need not necessarily be present." In re Edens, 290 N.C. 299, 226 S.E.2d 5 (1976).
Conduct prejudicial to the administration of justice that brings the Judicial Office into disrepute denotes "conduct which a judge undertakes in good faith but which nevertheless would appear to an objective observer to be not only unjudicial conduct but conduct prejudicial to public esteem for the judicial office." Geiler v. Commission on Judicial Qualifications, 10 Cal.3d 270, 515 P.2d 1, 110 Cal.Rptr. 201 (1973), cert. denied, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235; In re Edens, supra. Whether a judge's conduct should be so characterized "depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers." In re Crutchfield, 289 N.C. 597, 223 S.E.2d 822 (1975).
A criminal prosecution is an adversary proceeding in which the prosecuting attorney and defendant or his counsel are entitled to be present and to be heard. Failure to accord the prosecutor such opportunity violates North Carolina Code of Judicial Conduct, Canon 3A(4), 283 N.C. 771, 772, which provides:
"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding."
Application of the foregoing legal principles to defendant's actions in the various cases detailed in the findings of fact compels the conclusion that respondent is guilty of willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute in that respondent: (1) improperly precluded the district attorney from participating in the disposition of cases in which he represented the State and was entitled to be present and to be heard; (2) improperly removed the disposition of cases from public view in open court and transacted the court's business in secrecy; (3) improperly entered a judgment of not guilty in the Dr. Darviris case under circumstances suggesting bad faith; (4) improperly charged the court's judgment in the Lindsey Anthony Antis case under circumstances suggesting bad faith; and (5) violated Canon 3 A(4) of the North Carolina Code of Judicial Conduct. We conclude that respondent should be censured for such conduct in accordance with the recommendation of the Judicial Standards Commission.
Now, therefore, it is ORDERED by the Supreme Court of North Carolina that Judge George Z. Stuhl, be, and he is hereby censured for his improper conduct established and detailed in the findings of fact of the Judicial Standards Commission.
Done by the Court in Conference this 5th day of April 1977.
*569 LAKE, Justice, dissenting.
I dissent for the reasons stated by me in my dissenting opinion in In re Crutchfield, 289 N.C. 597, 605, 223 S.E.2d 822 (1976). This dissent is in no way intended as a condonation of any of the alleged conduct in office of the respondent or is it intended to imply that such conduct, if it occurred, is not prejudicial to the administration of justice or that it does not bring the judicial office into disrepute. My dissent is based solely upon what I consider the obvious unconstitutionality of the statute pursuant to which the Judicial Standards Commission operates and from which the jurisdiction of this Court in this proceeding is purportedly derived.