No. 48,592

*In re* Inquiry relating to Common Pleas Court Judge Daniel D. Dwyer.

(572 P.2d 898)

Opinion filed November 5, 1977.

*Emmet A. Blaes,* of Jochems, Sargent and Blaes, of Wichita, argued the cause and was on the brief for the respondent.

*Edward G. Collister, Jr.,* of Lawrence, argued the cause and was on the brief for the Commission on Judicial Qualifications.

*Per Curiam:* This is an original proceeding in discipline commenced against the respondent, Judge Daniel D. Dwyer, of the Court of Common Pleas of Sedgwick County. The Commission on Judicial Qualifications found that Judge Dwyer had violated various Canons of Judicial Conduct in seven specific instances, and it held in his favor on several other charges.

The Commission recommended public censure and suspension for a period of thirty days without pay for the seven violations established. Respondent promptly filed a petition to reject the Commission's recommendations, and both the respondent and the Commission have filed briefs. The matter was argued orally and has been submitted.

The applicable portions of the Canons of Judicial Conduct here involved are:

Canon 2 A. "A judge should . . . conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

Canon 3 A. (2) "A judge should maintain order and decorum in proceedings before him."

Canon 3 A. (3) "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity . . ."

Canon 3 A. (4) "A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. . . ." 214 Kan. xciv, xcv.

The record before the Commission consisted of the testimony of numerous witnesses and various exhibits. Transcripts totaling almost five hundred pages have been filed. We have carefully examined the record, and will discuss the charges in the order in which they appear in the findings of fact and conclusions of law of the Commission.

The first charge against respondent was that he violated Canon 2 A. by statements made in the course of an interview which was reported in the Wichita Sun on May 14, 1975. The interview followed the publication of the results of a poll of members of the Wichita Bar Association, which results were not flattering to the respondent. He, in turn, was critical of lawyers in the reported portion of the interview. Although he made laudatory remarks about the Sedgwick County judges during the course of the interview, that portion of the interview was not included in the newspaper story. Considering the entirety of the statements made, and the background thereof, we hold that the statements reported do not constitute a violation of Canon 2 A.

The second charge is that respondent violated the provisions of Canons 3 A. (2) and 3 A. (3) by regularly holding criminal arraignments in chambers in spite of the fact that by so doing, security problems were enhanced, and the order and decorum of the proceedings were adversely affected. Personnel from the offices of the clerk, the marshal, and the district attorney, testified that Judge Dwyer held more than fifty per cent of the arraignments in traffic and other misdemeanor cases, and first appearances in felony cases, in chambers. This necessitated the holding of some defendants in the judge's library while others were appearing before him in chambers. The presence of a deputy clerk, defendants, attorneys, marshals, bondsmen, and friends created crowded conditions in both the library and the chambers. The clerk had no table or other work space in chambers, and held files on her lap or piled them nearby on the floor. Extra marshals were required. In the event of guilty pleas, the judge proceeded to make final disposition of the cases in chambers, imposing fines, jail sentences or probation. Most of the time Judge Dwyer's courtroom was available to him, but he elected to conduct these proceedings in chambers even though his fellow judges, the marshal and the clerk voiced objections.

We are aware that certain judicial proceedings are quite frequently held in chambers. These include the holding of pretrial conferences in civil cases, and the holding of jury instruction conferences during trial. However, we conclude that arraignments and initial appearances in criminal cases are not the type of proceedings to be held in chambers. These proceedings should be

conducted in a courtroom if one is available, and particularly is this true since a guilty plea may be entered, and sentence may be imposed. Exceptions may properly be made when a defendant is hospitalized and unable to appear in court, or where all court-rooms are in use and a judge must of necessity utilize other facilities. But the regular holding of such proceedings informally in chambers is shown by the evidence before us to create security problems and to be wholly inconsistent with the proper conduct of a court. We conclude that a violation of Canon 3 A. (2) is established.

The third charge is that Judge Dwyer violated Canons 3 A. (2) and 3 A. (3) while conducting the first appearance of a defendant on a felony charge in chambers. A deputy marshal testified that he had taken a young black woman before Judge Dwyer in his chambers. After the arraignment, the defendant asked the judge a question and "he advised her to sit there and shut up. At that point she advised the Judge that she didn't believe she should be treated that way, that she should be treated like a human being, not an animal. At that time I was told by the Judge to take her and . . . 'throw her ass' out of his chambers. I went over to the woman, tried to calm her down and got her to the door and escorted her out of his chambers."

The evidence of this incident is clear. We hold that by this conduct the respondent violated Canons 3 A. (2) and 3 A. (3).

The fourth charge is that the respondent violated Canons 3 A. (2) and 3 A. (3) during the trial of a traffic charge against Clement R. Scoggin. Mr. Scoggin was not represented by counsel. He was charged with driving 66 miles per hour in a posted 55-mile zone. He admitted that he could have been driving 60 miles per hour, but he denied that his speed was 66 miles per hour. Two assistant district attorneys who were present in the courtroom testified that at the conclusion of the evidence, Judge Dwyer announced that he was finding Mr. Scoggin guilty. Mr. Scoggin inquired several times whether he was being found guilty of driving 60 miles per hour or 66 miles per hour. Judge Dwyer replied, "It doesn't make any difference," and imposed a fine of ten dollars plus court costs. The defendant again asked whether the court was finding him guilty of driving 60 miles per hour or 66 miles per hour. Judge Dwyer then raised the fine to twenty-five dollars and costs, called the marshal, and committed Mr. Scoggin to custody until the fine and costs were paid.

The record indicates that Mr. Scoggin had prior moving violations, and that a conviction of driving 11 miles per hour above the posted limit would materially affect his driving record, while a conviction for driving only 5 miles per hour above the posted limit would not. Judge Dwyer was not patient and courteous to the litigant before him, and his actions constitute a clear violation of Canon 3 A. (3).

The fifth charge relates to a visit to Judge Dwyer's office by Mr. Mike Burlingame. Mr. Burlingame testified in substance that on about November 22, 1974, he received a telephone call from his son; he went to the jail to see him and found that his young son had been sentenced to confinement for thirty days. Finding that Judge Dwyer had imposed the sentence, Mr. Burlingame went to respondent's chambers to talk with him. Mr. Burlingame explained to Judge Dwyer who he was, and that his son had never been in serious trouble before. He asked what he could do to get his son out of jail. Judge Dwyer made no response, but picked up the telephone and called the marshal's office. Mr. Burlingame waited but the judge said nothing to him. In a few moments two officers appeared and Judge Dwyer said, "Evict this man from my office." The officers did so.

There is nothing in the record to indicate that Mr. Burlingame menaced or threatened the judge, or that he raised his voice, used objectionable language, or caused any disturbance. Under the circumstances disclosed by the record, we hold that Judge Dwyer's conduct on this occasion constituted a violation of Canon 3 A. (3).

The facts upon which the sixth charge is based arose during the trial of a misdemeanor charge against Gregory Cotton. An assistant district attorney, who presented the state's case, testified that at the close of the state's evidence, Judge Dwyer told the defense not to bother to introduce any evidence, and as a result the defense rested without calling witnesses who had been subpoenaed. Respondent contended, during his testimony, that he was attempting to prevent the youthful defendant from perjuring himself. However well motivated Judge Dwyer may have been, he effectively foreclosed the defense from presenting its side of the dispute, thus giving the appearance of impropriety and denying to the defendant his full right to be heard. This action constituted a violation of Canon 3 A. (4).

The seventh and final charge is that the respondent violated Canons 3 A. (3) and 3 A. (4) during the trial of a small claims case, *Frye v. The School Board of Valley Center.* Mr. Frye testified that he subpoenaed five witnesses. When he appeared in court, none of the witnesses were there. He proceeded to present his case without them, lost it, and found out later that Judge Dwyer had released the witnesses without his knowledge. Judge Dwyer made no explanation to Mr. Frye, and said nothing during the trial about releasing the witnesses.

Judge Dwyer testified that an attorney for the school board came in and gave him "a general idea of what the factual situation was." The judge then read the court file, and two hours before the case was to be heard he called the board's attorney and excused the witnesses. He told the attorney that he would go ahead and hear the plaintiff's evidence, and then if it appeared that there was a purpose in these witnesses coming in, he would continue the case and hear them later. He heard the plaintiff's case, decided that plaintiff could not recover in any event, and entered judgment accordingly. He did not mention his conversation with counsel or explain his release of the witnesses to the plaintiff.

Judge Dwyer failed to afford Mr. Frye the full right to be heard which is mandated by Canon 3 A. (3). The evidence of this violation is undisputed.

Respondent raises a number of constitutional issues, all of which were fully discussed and decided by this court in *In re Rome,* 218 Kan. 198, 542 P.2d 676. We adhere to that decision and need not repeat what we said there.

The six breaches of the Code of Judicial Conduct reflect adversely upon the judiciary of this state. Patience, courtesy, dignity, and the appearance of fairness and objectivity were lacking. Considered together, these incidents show a course of conduct which demonstrated on the part of Judge Dwyer an intemperate, undignified and discourteous attitude toward and treatment of litigants and members of the public who came before him.

Since Daniel D. Dwyer is no longer serving in a judicial capacity, the recommendation of the Commission on Judicial Qualifications that he be suspended without pay for a period of thirty days is moot.

It is ordered that Daniel D. Dwyer be publicly censured by this court, and that he pay the costs of this proceeding.

Mr. Justice Holmes, not participating.