OPINION OF THE COURT

Per Curiam.

Petitioner, a Justice of both the Village Court of Blasdell and the Town Court of Hamburg, brings this proceeding to review a determination of the State Commission on Judicial Conduct ordering his removal from office. The issues raised embrace not only the propriety of the commission’s determination that petitioner be removed, but also the correctness of its findings of fact and conclusions of law (NY Const, art VI, § 22, subds a, d; Judiciary Law, § 44, subd 9; Matter of Spector v State Comm, on Judicial Conduct, 47 NY2d 462, 465-466). Upon our review of the record, we accept the determination of the commission.
In November, 1978 petitioner was served with a formal *468 written complaint containing a single charge of misconduct. At a hearing before a Referee, this factual picture was established.
As petitioner was leaving a tavern on the evening of May 5, 1978, he detained four youths whom he suspected of breaking glass in an adjacent parking lot. When the questioning did not proceed to his satisfaction, petitioner ordered the juveniles into a nearby grocery store for the purpose of calling the police. As he ushered the youths into the store, petitioner struck one of them, age 13, in the back of the head causing the latter to fall forward with such force that his head struck a bulletin board or doorframe. Although petitioner denied the blow, the credible evidence indicates otherwise.
Summoned to the grocery by petitioner, a police officer escorted the youths to the village police station. Prior to transporting them, the patrolman searched the parking lot but could find no evidence of broken glass. Nor was any glass discovered by an employee of the store who had examined the lot previously.
At the station house, petitioner’s conduct was even less restrained. Upon entering the station, petitioner proceeded to upbraid the youths in a most injudicious manner. His language was vulgar and derogatory, his manner taunting and hostile. He uttered particularly demeaning comments concerning an identifiable ethnic group and stated that if he ever saw one of the youths before his court, he would send her to jail. While leaving, petitioner, presumably irritated by the attitude of the four youths, was prompted to vent his displeasure by intentionally, and without any justifiable provocation, striking one of them, age 16, in the face, causing his nose to bleed. Following this assault, petitioner left the police station without apology.
Some two or three weeks later, petitioner met with this boy and his father to discuss the incident. Petitioner explained that the assault had been unintentional, apologized to the youth and offered to allow the boy to strike him. Upon declination of the offer, petitioner proposed the execution of a general release. Ultimately, petitioner paid the youth $100 in return for which he and his father executed a release purportedly relieving petitioner, both individually and in his capacity as Village Justice, from any liability arising out of the incident at the police station.
Without question, petitioner’s conduct was egregious and *469 inexcusable. He does not and indeed could not justify his actions. Instead, he maintains that removal from office would be a Draconian sanction since such conduct was unrelated to his judicial duties. This argument, however, fails to comprehend the basic maxim that a Judge may not so facilely divorce behavior off the Bench from the judicial function. Standards of conduct on a plane much higher than for those of society as a whole, must be observed by judicial officers so that the integrity and independence of the judiciary will be preserved. A Judge must conduct his everyday affairs in a manner beyond reproach. Any conduct, on or off the Bench, inconsistent with proper judicial demeanor subjects the judiciary as a whole to disrespect and impairs the usefulness of the individual Judge to carry out his or her constitutionally mandated function (see Matter of Spector v State Comm. on Judicial Conduct, supra, at pp 468-469; Matter of Pfingst, 33 NY2d [ii], [kk]). As the Referee aptly noted, throughout this entire incident petitioner, "although off the bench remained cloaked figuratively, with his black robe of office devolving upon him standards of conduct more stringent than those acceptable for others.”
Petitioner’s actions transformed what he perceived to be a trivial offense into a grotesque confrontation with four young adolescents. The episode was marked by two frenzied displays of overt physical violence, as well as repeated outbursts involving outrageous verbal abuse and virulent racism. Moreover, his testimony before the Referee was so at variance with that related by disinterested witnesses as to display at the very least a gross lack of candor. These acts, even on the part of a member of the public would have been, at a bare minimum, a flagrant breach of accepted norms. When performed by a Judge, a person required to observe "high standards of conduct so that the integrity * * * of the judiciary may be preserved” (Rules Governing Judicial Conduct, 22 NYCRR 33.1), such conduct is inexcusable. In abusing the youths inside the police station, petitioner failed to exercise even a modicum of sensitivity or self-control so vital to the demands of his position. And in intentionally striking two of them without provocation, petitioner exhibited an unrelenting display of injudicious temperament demeaning to the processes of justice.
It is noted additionally that petitioner has previously been censured by the Court on the Judiciary for improperly granting favored treatment to defendants in traffic cases pending *470 before his courts and requesting similar treatment on behalf of defendants in other Judges’ courts (Matter of Kuehnel, 45 NY2d [y]). This prior censure further supports the finding that petitioner’s future retention of office is inconsistent with the fair and proper administration of justice.
For these reasons, the determined sanction of removal is accepted, without costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion.
Determined sanction accepted, without costs.