IN RE COMPLAINT AGAINST FRANCIS J. KNEIFL,
DISTRICT JUDGE IN AND FOR THE EIGHTH JUDICIAL
DISTRICT OF THE STATE OF NEBRASKA.
STATE OF NEBRASKA EX REL. COMMISSION ON JUDICIAL
QUALIFICATIONS, RELATOR, V. FRANCIS J. KNEIFL,
RESPONDENT.

351 N.W.2d 693

Filed June 1, 1984. No. JQ83-001.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for relator.

Daniel D. Jewell, for respondent.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This matter comes before this court pursuant to the provisions of Neb. Rev. Stat. §§ 24-715 et seq. (Cum. Supp. 1982) upon the December 13, 1983, complaint of the Nebraska Commission on Judicial Qualifications against respondent, Francis J. Kneifl, a district court judge in and for the Eighth Judicial District of the State of Nebraska, which complaint charged respondent with four counts of misconduct.

A formal hearing on the complaint was had on February 14, 1984, before the master, the Honorable Dale E. Fahrnbruch, a district court judge in and for the Third Judicial District of the State of Nebraska, a court of record. Both the commission and respondent accepted the findings of fact made and conclusions of law reached by the master. On April 2, 1984, the commission determined that two of its charges of misconduct against respondent had been proved but that two had not, and, accordingly, dismissed the latter. On April 20, 1984, respondent accepted the report of the commission, except as noted hereinafter. Oral arguments before this court were held on May 11, 1984.

Neb. Const. art. V, § 30(1), and § 24-721 provide that if the commission finds the charges are established by clear and convincing evidence, it shall recommend appropriate disciplinary sanctions to this court. We, therefore, may only concern ourselves with the two counts which the commission found were proved.

The first of these counts (hereinafter designated as Count I) is that on March 29, 1983, respondent conducted himself in a manner prejudicial to the administration of justice, thereby bringing the judicial office into disrepute, contrary to the provisions of § 24-722(6), by threatening reprisals against and

cursing certain police officers who were engaged in the lawful performance of their duties.

The second count with which we are concerned (hereinafter designated as Count II) is that on August 1 and 31, 1981, respondent conducted himself in a manner prejudicial to the administration of justice, thereby bringing the judicial office into disrepute by attempting to use the power of his office to influence a county attorney to either reduce or drop criminal charges against an acquaintance of respondent.

The relevant part of § 24-722, the statute on which the foregoing charges are founded, reads:

> A . . . judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed six months, or removed from office for . . . (6) conduct prejudicial to the administration of justice that brings the judicial office into disrepute . . . .

Conduct which falls short of reaffirming one's fitness for the high responsibilities of judicial office constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute. See *Geiler v. Commission on Judicial Qualifications*, 10 Cal. 3d 270, 515 P.2d 1, 110 Cal. Rptr. 201 (1973), *cert. denied* 417 U.S. 932, 94 S. Ct. 2643, 41 L. Ed. 2d 235 (1974). It includes conduct which would justify a reasonable man in believing that a result achieved by a judge was achieved because of his position and prestige, see *In re Foster*, 271 Md. 449, 318 A.2d 523 (1974), and conduct which would appear to an objective observer to be not only unjudicial but prejudicial to public esteem for the judicial office, *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976). It depends not so much on the judge's motives but more on the conduct itself, the results thereof, and the impact such conduct might reasonably have upon knowledgeable observers. *In re Stuhl*, 292 N.C. 379, 233 S.E.2d 562 (1977). The "judicial office" re-

fers not to the judge as an individual but, rather, to the judiciary. *Matter of Dalessandro*, 483 Pa. 431, 397 A.2d 743 (1979). Conduct prejudicial to the administration of justice that brings the judicial office into disrepute is less grave than willful misconduct in office. *McCartney v. Commission on Judicial Qualifications*, 12 Cal. 3d 512, 526 P.2d 268, 116 Cal. Rptr. 260 (1974); *Geiler v. Commission on Judicial Qualifications, supra.*

The commission's findings with respect to Count I are that on March 28, 1983, in the course of being booked for driving while under the influence of intoxicants in Iowa, respondent cursed a police officer while she was in the performance of her duties, and threatened other officers, also while in the course of their duties, with reprisals by saying that they "better never be" in his court and that if they ever came before him in his court, they would "be sorry."

With respect to Count II the salient facts are that in August of 1981 respondent advised a county attorney's partner that one with whom respondent was acquainted had been charged with driving while under the influence of intoxicants and refusal to submit to testing. Respondent asked the partner and county attorney to help or see what could be done for the acquaintance. There is no evidence that respondent directly asked the county attorney or his partner to reduce or dismiss the charges against the acquaintance, nor any evidence that respondent gained any financial or personal gain from the request he made. The commission found that respondent attempted to influence the county attorney to reduce the charges.

Our first task is to determine the nature and scope of our review. Neb. Const. art. V, § 30(2), reads:

> The Supreme Court shall review the record of the proceedings and in its discretion may permit the introduction of additional evidence. The Supreme Court shall make such determination as it finds just and proper, and may order the reprimand, discipline, censure, suspension, removal,

or retirement of such Justice or Judge of the Supreme Court or other judge, or may wholly reject the recommendation[.] [U]pon an order for retirement, the Justice or Judge of the Supreme Court or other judge shall thereby be retired with the same rights and privileges as if he or she had retired pursuant to statute. Upon an order for removal, the Justice or Judge of the Supreme Court or other judge shall be removed from office, his or her salary shall cease from the date of such order, and he or she shall be ineligible for judicial office. Upon an order for suspension, the Justice or Judge of the Supreme Court or other judge shall draw no salary and shall perform no judicial functions during the period of suspension. Suspension shall not create a vacancy in the office of Justice or Judge of the Supreme Court or other judge.

Section 24-723 reiterates the same powers, although in slightly altered language. We note that respondent raises no issue with respect to the fact that although the charges involved allege a violation of § 24-722(6), the finding of the commission is that he violated Neb. Const. art. V, § 30(f) (sic), the relevant language of the two being identical.

From the power to permit the introduction of additional evidence, we conclude that our review is to be de novo. When no new evidence is received, our review must be de novo on the record. See *Matter of Cieminski*, 270 N.W.2d 321 (N.D. 1978). Our duty, then, is to determine upon our own independent inquiry, as to the charges of alleged misconduct referred to us, whether the evidence clearly and convincingly proves that respondent acted in such a manner as to prejudice the administration of justice and bring the judicial office into disrepute. See, *In re Conduct of Roth*, 293 Or. 179, 645 P.2d 1064 (1982); *Matter of Heuermann*, 90 S.D. 312, 240 N.W.2d 603 (1976).

Having conducted that inquiry, we hold that the

evidence does, clearly and convincingly, prove that respondent did so act, contrary to the provisions of Neb. Const. art. V, § 30(1)(f), and § 24-722(6), in the particulars found by the commission as set forth earlier in this opinion.

We must now address the discipline which is to be imposed. The commission recommended the following:

a. That Judge Francis J. Kneifl be suspended without pay for a period of three months, said suspension to begin on the 1st day of June, 1984, and terminate on the 31st day of August, 1984.

b. That immediately upon said suspension becoming effective, Judge Francis J. Kneifl should subject himself to alcohol evaluation by an institution able to perform such evaluations, which institution should first be approved by the Supreme Court of Nebraska.

c. That in the event such evaluation concludes that Judge Francis J. Kneifl is in need of alcohol treatment, that Judge Kneifl should, during said period of suspension, undertake such alcohol treatment. Both the evaluation and alcohol treatment are to be at the sole cost and expense of Judge Kneifl.

d. That upon completion of said period of suspension, Judge Francis J. Kneifl be reinstated as Judge of the Eighth Judicial District of the State of Nebraska.

e. That all the costs and expenses of this proceeding be taxed against Judge Francis J. Kneifl.

Respondent accepts that he should be disciplined, but takes exception to the recommendation he be suspended from office. He argues that the two isolated incidents of misconduct did not occur while he was performing his official duties and that he has executed his judicial duties expeditiously and competently. He also contends that his suspension from office would impose a burden on other judges who

will be called upon to handle the caseload in the Eighth Judicial District and would perhaps result in delays in the administration of justice. He suggests that his willingness to accept discipline, his recognition of the error of his ways, and his cooperation in the disciplining process, including entering into a stipulation of facts, mitigate against his suspension. Respondent suggests as alternatives that he be reprimanded or censured, fined, or required to serve his district at a reduced rate of pay. Respondent further argues that the assessment of costs is itself a quite severe form of discipline which tends to chill vigorous defense efforts. He argues, as we understand it, that the amount of costs for which he becomes liable should be limited or otherwise taken into account in considering the totality of the sanctions imposed. Although respondent states there is no evidence in the record that he is addicted to alcohol, except that which can be inferred from Count I, he wishes to submit to alcohol evaluation and undergo treatment if necessary.

While we recognize that the commission's recommendations are entitled to be given weight, see, *Disciplinary Proceeding Against Buchanan*, 100 Wash. 2d 396, 669 P.2d 1248 (1983), and *McCartney v. Commission on Judicial Qualifications*, 12 Cal. 3d 512, 526 P.2d 268, 116 Cal. Rptr. 260 (1974), it is clearly this court's obligation to make its own determination of what discipline is appropriate within the limits set by our Constitution and statute. Neb. Const. art. V, § 30(2), and § 24-723.

While respondent's general performance as a jurist may be a relevant factor to consider in determining the appropriate discipline, *In re Inquiry of Lee*, 336 So. 2d 1175 (Fla. 1976), we note that his technical competency and efficiency are not at issue. It is true, as respondent suggests, that misconduct of a judge in his official capacity is more culpable than extrajudicial misconduct. It does not follow, however, that extrajudicial misconduct should be ig-

nored, especially where, as in the instant matter, the misconduct is predicated upon the holding of judicial office. The threats made to the police officers were, in effect, that respondent would wreak judicial vengeance upon them should they ever appear in a court over which he presided. His effort to influence the county attorney depended, at least in part, on respondent's presiding over a court in which that attorney and his partner could be expected to appear. We have ruled that an attorney may be disciplined for misconduct outside the practice of law. *State ex rel. Nebraska State Bar Assn. v. Leonard*, 212 Neb. 379, 322 N.W.2d 794 (1982); *State ex rel. Nebraska State Bar Association v. Walsh*, 206 Neb. 737, 294 N.W.2d 873 (1980). A judge is even more responsible for the administration of justice than is an attorney; no one can seriously contend that we may exact a higher standard of conduct from members of the bar than from members of the bench. As said in *Matter of Killam*, 388 Mass. 619, ___, 447 N.E.2d 1233, 1236 (1983):

Conduct by a judge resulting in his apprehension for operating a motor vehicle on a public way while under the influence of intoxicating liquor constitutes a clear violation of the Code's stricture that "[a] judge . . . should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved." S.J.C. Rule 3:09, Canon 1. Moreover, such conduct also constitutes a clear violation of the Code's admonition that "[a] judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." S.J.C. Rule 3:09, Canon 2(A).

These rules may be applicable, in some circumstances, to the judge's conduct whether or not that conduct is directly related to judicial duties. In another case of a single incident of

misconduct involving extrajudicial activity, we concluded that "the judge's misconduct brought undeserved discredit to the administration of justice in the Commonwealth." *Matter of Larkin*, 368 Mass. 87, 91-92, 333 N.E.2d 199 (1975). Whether particular conduct warrants discipline is not dependent upon whether it occurs on or off the bench, as conduct inconsistent with judicial demeanor subjects the judiciary as a whole to disrespect and impairs the usefulness of an individual judge to carry out his duties. See *Mtr of Steinberg*, 51 N.Y.2d 74, 409 N.E.2d 1378, 431 N.Y.S.2d 704 (1980).

Respondent's observation that suspending him would impose a burden on the other district judges is obviously accurate. Such is the inevitable aftermath of removing or suspending a judge, just as it is upon a judge's retirement or resignation. In such instances those judges remaining in the system must take on and discharge additional duties in order that justice may be properly administered. That additional burden on the remaining judges cannot become a reason to forego suspension or removal, if such is the appropriate sanction.

Next, respondent calls our attention to a number of cases in which the sanction imposed was less severe than suspension. *Matter of Cieminski*, 270 N.W.2d 321 (N.D. 1978), described the censure of a judge who stated two misdemeanants would not be arraigned because they did not take the matter seriously, failed to keep a required verbatim record, displayed his judicial identification to various persons under circumstances detracting from the integrity and impartiality of the judiciary, and handled checking accounts for individuals having difficulty with finances, including the checking account of one named in a collection suit in the court over which the judge presided. *In re Dwyer*, 223 Kan. 72, 572 P.2d 898 (1977), presented a judge who was disrespectful to litigants and failed to afford them their

full rights. He was censured. *In re Crutchfield*, 289 N.C. 597, 223 S.E.2d 822 (1975), dealt with a judge who signed a judgment allowing a limited driving privilege without making any effort to ascertain whether the facts recited to him were true and whether he had the legal authority to act. The facts were not true and he had no authority to act. Moreover, he failed to file the judgment as required by law. He was censured. *In re Rome*, 218 Kan. 198, 542 P.2d 676 (1975), involved a judge who was held to have publicly ridiculed a defendant found guilty of prostitution by writing his memorandum in poetry, which made light of the situation and which used a number of street words. The court ruled the judge had violated the requirement that he act in a dignified and courteous manner, but concluded that the matter was not one of great magnitude, and censured the offending judge. *McCartney v. Commission on Judicial Qualifications*, 12 Cal. 3d 512, 526 P.2d 268, 116 Cal. Rptr. 260 (1974), declared that the judge's use of intemperate language, displays of uncontrolled temper, unreasonable verbal abuse and the bullying of defendants in criminal cases, and the use of similar conduct toward court personnel, other judges, and counsel constituted willful misconduct prejudicial to the administration of justice. Because inexperience and attempts to ''do justice'' were present, he was censured rather than, as the commission had recommended, removed from office.

On the other hand, cases may be found at various points of the leniency-severity spectrum, even where the misconduct arose off the bench. *Matter of Shilling*, 51 N.Y.2d 397, 415 N.E.2d 900, 434 N.Y.S.2d 909 (1980), *appeal dismissed* 451 U.S. 978, 101 S. Ct. 2301, 68 L. Ed. 2d 834 (1981), presented the removal of a judge who sat on the board of a nonprofit corporation which wished to obtain a permit to operate an animal shelter. Although he had an excellent reputation for honesty, integrity, and judicial demeanor

in the legal community, he had been privately admonished for having used profane, vulgar, and inappropriate language in open court. In connection with his service on the board of the nonprofit corporation, he, in intemperate tones and with the use of vulgarity in the presence of the public after identifying himself as a judge, threatened to use his influence with friends in high places to achieve the ends he sought, and attempted to interfere with the work of other agencies. In *Matter of Kuehnel*, 49 N.Y.2d 465, 403 N.E.2d 167, 426 N.Y.S.2d 461 (1980), a previously censured judge, upon leaving a tavern, detained and questioned four youths whom he suspected of breaking some glass and forced them to go with him to a store to call police. On the way he hit one of the youths behind the head, causing him to fall. When the policeman arrived, the judge accompanied the policeman and the youths to the police station, although no broken glass had been found. Upon entering the station the judge upbraided the youths in vulgar and derogatory language and in a taunting and hostile manner. He told one of the youths if he ever saw her before his court, he would send her to jail. Upon leaving the station the judge struck a 16-year-old youth in the face, causing a bloody nose. Some 2 or 3 weeks later the judge met with one boy and his father to discuss the incident and apologized to the youth and offered to permit the boy to strike him. He also paid for a release from liability. The New York Court of Appeals, in accepting the commission recommendation of removal from office, stated at 468-69, 403 N.E.2d at 168, 426 N.Y.S.2d at 462-63:

> Without question, petitioner's conduct was egregious and inexcusable. He does not and indeed could not justify his actions. Instead, he maintains that removal from office would be a Draconian sanction since such conduct was unrelated to his judicial duties. This argument, however, fails to comprehend the basic maxim

that a Judge may not so facilely divorce behavior off the Bench from the judicial function. Standards of conduct on a plane much higher than for those of society as a whole, must be observed by judicial officers so that the integrity and independence of the judiciary will be preserved. A Judge must conduct his everyday affairs in a manner beyond reproach. Any conduct, on or off the Bench, inconsistent with proper judicial demeanor subjects the judiciary as a whole to disrespect and impairs the usefulness of the individual Judge to carry out his or her constitutionally mandated function (see *Matter of Spector v. State Comm. on Judicial Conduct, supra,* [47 N.Y.2d 462] at pp 468-469 [392 N.E.2d 552, 418 N.Y.S.2d 565 (1979)]; *Matter of Pfingst,* [N.Y. Ct. Jud.] 33 NY2d [(a)] [ii], [kk] [409 N.Y.S.2d 986 (1973)]). As the Referee aptly noted, throughout this entire incident petitioner, ''although off the bench remained cloaked figuratively, with his black robe of office devolving upon him standards of conduct more stringent than those acceptable for others.''

Instances of misconduct during the performance of official duties have also resulted in disciplinary sanctions of varying degrees. *In re McDonough,* 296 N.W.2d 648 (Minn. 1979), involved a judge who was addicted to alcohol and, among other things, threatened county and state officers, was absent from his duties, and abused those appearing before him. He was censured, ordered to forfeit his salary for 3 months, and placed on probation for the remainder of his service as a judge. The judge in *Matter of Inquiry Concerning a Judge No. 481,* 251 Ga. 524, 307 S.E.2d 505 (1983), was suspended without pay for 15 days for making flippant or derogatory remarks, both in the presence of and outside the hearing of the jury during the course of a trial, and directing the reporter to ''take down nothing further.'' In *In re*

*Romero*, 100 N.M. 180, 668 P.2d 296 (1983), a judge was suspended for 30 days because he lacked patience, dignity, and courtesy in dealing with those who appeared before him, and otherwise neglected his duties. In *Gonzalez v. Com'n on Judicial Performance*, 33 Cal. 3d 359, 657 P.2d 372, 188 Cal. Rptr. 880 (1983), *appeal dismissed* ___ U.S. ___, 104 S. Ct. 690, 79 L. Ed. 2d 158 (1984), a judge who used his judicial office in efforts to intercede in criminal matters involving his friends and benefactors, who required attorneys to post their own funds as a condition of granting bail to their clients, who held court in the absence of counsel for one or both of the parties, who left the bench while evidence was being adduced, and who failed to make a record of proceedings was removed from office.

In the final analysis, however, any effort to design the appropriate discipline in this matter by comparing it with that imposed in any case by any other jurisdiction is of limited value. Although analyzing what other jurisdictions have done is instructive, the responsibility of defining and enforcing proper conduct for Nebraska judges falls upon this tribunal. Neb. Const. art. V, § 30(2), and § 24-723. See, also, Neb. Const. art. V, § 1, vesting in this court general administrative authority over all courts.

The purpose of sanctions in cases of judicial discipline is to preserve the integrity and independence of the judiciary and to restore and reaffirm public confidence in the administration of justice. The discipline we impose must be designed to announce publicly our recognition that there has been misconduct; it must be sufficient to deter respondent from again engaging in such conduct; and it must discourage others from engaging in similar conduct in the future. Thus, we discipline a judge not for purposes of vengeance or retribution, but to instruct the public and all judges, ourselves included, of the importance of the function performed by judges in a free society. We discipline a judge to reassure the

public that judicial misconduct is neither permitted nor condoned. We discipline a judge to reassure the citizens of Nebraska that the judiciary of their state is dedicated to the principle that ours is a government of laws and not of men. See, *Disciplinary Proceeding Against Buchanan*, 100 Wash. 2d 396, 669 P.2d 1248 (1983); *Matter of Ross*, 428 A.2d 858 (Me. 1981).

Neb. Const. art. V, § 30(1), and § 24-721 entrust to this court discretion to impose disciplinary sanctions ranging from a mere reprimand to removal from office. However, it may not suspend a judge for more than 6 months.

Weighing the nature of respondent's misconduct, the context in which it arose, and the purposes for which judicial discipline is imposed, we conclude that the commission's recommendations are sound and should be accepted by this court. Any lesser sanction would minimize the seriousness of respondent's misconduct; any greater sanction would be unjustly vindictive.

We therefore adopt the commission's recommendations "a" through "e" set forth earlier in this opinion, except, and except only, that we modify recommendation "a" to read as follows:

That Judge Francis J. Kneifl be suspended without pay for a period of three months, said suspension to begin on the 1st day of July 1984 and terminate on the 30th day of September 1984. Respondent shall decide all matters taken under submission by him before June 30, 1984.

JUDGMENT OF DISCIPLINARY SANCTIONS.

KRIVOSHA, C.J., not participating.