IN RE: INQUIRY CONCERNING A JUDGE, NO. 44, WILLIAM J. MARTIN

No. 90

(Filed 14 July 1978)

1. **Judges § 7— censure or removal of judges—jurisdiction of Supreme Court—constitutionality of statute**

   Art. IV, § 17(2) of the N. C. Constitution, which is a positive mandate to the Legislature to provide a procedure in addition to impeachment for the removal of judges and justices, by implication gives the Legislature authority to confer upon the Supreme Court original jurisdiction to censure or remove judges and justices.

2. **Judges § 7— misconduct in office—lay judge**

   There is no merit in the contention of a district court judge that he was singled out for censure or removal because he was a lay judge.

**In re Martin**

**3. Judges § 7— censure or removal of judge —independent judgment by Supreme Court**

The Supreme Court is not bound by the recommendation of the Judicial Standards Commission as to the censure or removal of a judge but must consider all the evidence and exercise its independent judgment as to whether it should censure, remove, or decline to do either.

**4. Judges § 7— proceedings before Judicial Standards Commission—quantum of proof**

The quantum of proof in proceedings before the Judicial Standards Commission is proof by clear and convincing evidence—a burden greater than that of proof by a preponderance of the evidence and less than that of proof beyond a reasonable doubt.

**5. Judges § 7— misconduct in office—arbitrary dismissal of criminal case**

A district court judge's arbitrary dismissal of a criminal case, after the district attorney had refused to take a nol pros and without permitting the State to offer its evidence, constituted willful misconduct in office clearly calculated to bring the court into disrepute and was not excused by the fact that the judge was a lay judge holding his first week of court.

**6. Judges § 7— misconduct in office—ex parte order for delivery of personalty**

The conduct of a district court judge in signing an order for delivery of personal property without notice to the opposing party or his counsel and without giving the opposing party or his counsel an opportunity to be heard constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

**7. Judges § 7— misconduct in office — ex parte hearing after continuance granted by another judge—insufficiency of evidence**

The evidence did not support a finding by the Judicial Standards Commission that a district court judge entered an order granting plaintiff alimony *pendente lite*, child custody and possession of the homeplace without the presence of or notice to defendant or his counsel after having been advised that another judge had granted a continuance in the case.

**8. Judges § 7— misconduct in office—ex parte consideration of case**

The conduct of a district court judge in holding a hearing in a civil case an hour after notice of the hearing was given to defendant's counsel and in entering judgment for plaintiff in the absence of defendant or his counsel was, in effect, a willful *ex parte* consideration of the case without proper legal notice to defendant or his counsel and constituted willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute.

**9. Judges § 7— misconduct in office—censure or removal**

There are no strict guidelines or standards for determining whether a judge or justice should be censured or whether he should be removed since each case must be decided on its own facts.

---

In re Martin

---

**10. Judges § 7— misconduct in office—when removal is required**

A judge should be removed from office where his misconduct involves personal financial gain, moral turpitude or corruption or where he knowingly and willfully persists in indiscretions and misconduct which the Supreme Court has declared to be, or which under the circumstances he should know to be, acts which constitute willful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

**11. Judges § 7— misconduct in office—censure**

Any act by a judge or justice which is prejudicial to the administration of justice and brings the judicial office into disrepute warrants censure.

**12. Judges § 7— misconduct in office—suborning perjury—insufficiency of evidence**

A finding that a district court judge had committed the felony of suborning perjury, if supported by clear and convincing evidence, would require the removal of the judge from office. However, a finding by the Judicial Standards Commission in this proceeding that a district court judge had suborned perjury was not supported by clear and convincing evidence and would not support removal of the judge from office.

**13. Judges § 7— misconduct in office—censure—arbitrary dismissal of criminal case—ex parte orders**

A district court judge is censured by the Supreme Court for willful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute for his conduct in arbitrarily dismissing a criminal case without hearing evidence after the district attorney refused to take a nol pros, signing an order for delivery of personal property without giving the opposing party or his counsel notice and an opportunity to be heard, and holding a hearing and entering an order for plaintiff in a domestic relations case without giving proper notice to defendant or his counsel and without the presence of defendant or his counsel.

THIS matter is before this Court upon a recommendation by the Judicial Standards Commission (Commission), filed with the Court on 28 February 1978, that Judge William J. Martin, a judge of the General Court of Justice, District Court Division, Twenty-Fifth Judicial District of the State of North Carolina, be removed from office for "wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute." *See*, Article IV, Section 17(2) of the North Carolina Constitution; G.S. 7A-376 (1977 Cum. Supp.); Canons 2(a) and 3(a)(4) of the North Carolina Code of Judicial Conduct.

*Harold D. Coley, Jr., Special Counsel for the Judicial Standards Commission.*

*West and Groome, by Ted G. West, for respondent.*

BRANCH, Justice.

A citizen of this State filed a written complaint concerning the conduct of Judge William J. Martin (respondent), and pursuant to the provisions of G.S. 7A-377, the Commission conducted an investigation. This proceeding was initiated by the filing of a complaint verified by Harold D. Coley, Jr., Special Counsel for the Commission, alleging that respondent had committed specified acts constituting "wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

Respondent answered initially alleging that the Commission was without jurisdiction or authority to review the decisions or judgments of the judges of duly constituted courts made after hearing evidence in open court. By the remainder of his answer, he denied the principal allegations of the complaint and set forth his contentions as to the true facts.

On 10 November 1977, respondent was accorded a plenary hearing before seven members of the Commission on the charges contained in the complaint. The Commission's evidence was presented by Mr. Harold D. Coley, Jr., Special Counsel for the Commission, and respondent was represented by his counsel, Mr. Ted. G. West. Respondent testified and offered witnesses who testified as to his good character. After hearing the evidence, the Commission made extensive written findings of fact and concluded as a matter of law that the conduct of respondent as set forth in its findings constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. The findings upon which the Commission based its conclusions are as follows:

> a.) That in reference to the case STATE OF NORTH CAROLINA v. JOHN BUXTON LONG, 74Cr18783, over which Respondent was scheduled to preside on 10 December 1974 in Catawba County District Court, Respondent, prior to opening of Court, summoned Assistant District Attorney Edward J. Crotty to his chambers; that in the presence of the defendant and defendant's mother, Respondent advised Mr. Crotty that the defendant "needed a break"; that the defendant's father and a relative of Respondent had died in a common accident, that for these reasons, Respondent requested Mr.

Crotty to enter a "nol pros" in the case; that Mr. Crotty ad-
vised Respondent that the breathalyzer reading was too high
for him to enter a "nol pros" but that he would take a plea of
guilty to the charge of careless and reckless driving under
the circumstances; that subsequent to this conversation and
in open court, Assistant District Attorney Crotty called the
case for trial; that Respondent ordered the case "held open";
that thereafter, without the knowledge of Mr. Crotty,
Respondent ordered the Courtroom Clerk, Carolyn
Wrightsell, to enter a dismissal in the case; that the order of
dismissal was entered when no evidence was introduced by
either the State or the defendant.

b.) That in reference to the case of *STATE OF NORTH
CAROLINA v. CHARLES D. FLEMING*, 75Cr20356, over which
the Respondent was scheduled to preside on 4 March 1975 in
Catawba County District Court in Hickory, North Carolina,
the Respondent, while accompanied by Mr. Joe K. Byrd, Jr.,
attorney for the defendant, approached Officer G. P. Herman
of the Hickory Police Department, in the hallway outside the
courtroom; that the Respondent knew that Officer Herman
was the arresting officer in the case and was present when
the breathalyzer test was administered to the defendant;
that the Respondent initiated a conversation with Officer
Herman during which the Respondent requested Officer Her-
man to testify under oath that he was not present when the
breathalyzer test was administered; that Officer Herman im-
mediately reported the conversation and incident to the
Chief of Police, Hickory Police Department, Melvin Tucker.

c.) That on 14 December 1976 in the case *REBECCA
DOWELL v. JESSE CHARLES DOWELL*, 76CvD726, Burke Coun-
ty District Court, Respondent entered an order in favor of
the plaintiff for the possession of an automobile without
notice to or the presence of the defendant or counsel for the
defendant, J. Richardson Rudisill, as provided by law; that
Respondent entered the Order outside of Burke County and
while Respondent was scheduled to preside over the District
Court in Catawba County.

d.) That on 31 January 1977 in the case of *REBECCA
DOWELL v. JESSE CHARLES DOWELL*, 76CvD726, Burke Coun-
ty District Court, the Respondent signed an Order awarding

alimony *pendente lite*, child custody, and that plaintiff Dowell have possession of defendant's homeplace; that Respondent took evidence from the plaintiff before signing the Order; that the hearing was held and the Order entered without the presence of or notice to defendant or defendant's counsel as provided by law; that the Respondent was specifically and directly notified in a telephone conversation by Samuel M. Tate, District Court Judge, 25th Judicial District, on the same day, just prior to the hearing and entry of judgment, that he, Judge Tate, had granted a continuance until 14 February 1977, and specifically requested the Respondent to honor this order of continuance; that Judge Tate advised both the Respondent and Counsel for the plaintiff in a telephone conversation that counsel for the defendant had cases in Superior Court of Catawba County and Superior Court of Caldwell County on Monday, 31 January 1977, with the Caldwell County case having been preemptorily set.

e.) That on 8 February 1977 in the case *SUE HIGGINS STROUP v. STEPHEN HILLARD STROUP*, 76CvD834, Burke County, the Respondent knowingly presided at a hearing out of term when Respondent was not scheduled to hold court in Burke County and entered a judgment for the plaintiff in the case in the absence of the defendant or defendant's counsel and with knowledge that proper notice as required by law had not been given the defendant or Stephen T. Daniel, Jr., attorney for the defendant.

Based upon these findings of fact and conclusions of law, the Commission recommended that the Supreme Court of North Carolina remove respondent from judicial office. On 15 March 1978, respondent petitioned this Court for a hearing on the Commission's recommendation for removal.

[1] We first consider respondent's contention that this Court is without original jurisdiction to censure or remove judges.

The procedures by which this Court may pass upon the actions or recommendations of the Judicial Standards Commission are set forth in N.C.G.S. ch. 7A, art. 30 (Cum. Supp. 1977). G.S. 7A-376 provides:

> *Grounds for censure or removal.* Upon recommendation of the Commission, the Supreme Court may censure or

In re Martin

remove any justice or judge for wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. . . .

Further, G.S. 7A-377(a), in part, provides:

. . . A respondent who is recommended for censure or removal is entitled to a copy of the proposed record to be filed with the Supreme Court, and if he has objections to it, to have the record settled by the Commission. He is also entitled to present a brief and to argue his case, in person and through counsel, to the Supreme Court. A majority of the members of the Supreme Court voting must concur in any order of censure or removal. The Supreme Court may approve the recommendation, remand for further proceedings, or reject the recommendation. . . .

Respondent contends, however, that since the jurisdiction of this Court is defined by Article IV, Section 12, of the North Carolina Constitution, it can be altered only if constitutionally authorized. He argues that the Constitution does not authorize expansion of the jurisdiction of the Supreme Court by the Legislature and that the Legislature was, therefore, without authority to confer upon this Court original jurisdiction over the censure and removal of judges. In support of this contention, respondent relies upon the decisions of this Court in *Smith v. State*, 289 N.C. 303, 222 S.E. 2d 412 (1976), and *Utilities Commission v. Finishing Plant*, 264 N.C. 416, 142 S.E. 2d 8 (1965).

In discussing the jurisdiction of this Court, we held, in *Smith v. State, supra,* that the Supreme Court no longer had original jurisdiction over claims against the State since the electorate had approved the present Article IV which did not contain the earlier provisions which granted original jurisdiction over such claims to the Court. In so holding, Chief Justice Sharp, speaking for the Court, stated:

It is a well-established principle of constitutional law that when the jurisdiction of a particular court is constitutionally defined, the legislature cannot by statute restrict or

enlarge that jurisdiction unless authorized to do so by the constitution. . . . 289 N.C. at 328.

In that opinion, the Chief Justice also summarized the holding in *Utilities Commission v. Finishing Plant, supra,* as follows:

> Thus *Finishing Plant, supra,* squarely held the General Assembly without authority to expand the appellate jurisdiction of this Court beyond the limits set in the Constitution. 289 N.C. at 329-330.

Article IV, Section 12, of the North Carolina Constitution, in pertinent part, provides:

*Jurisdiction of the General Court of Justice.*

(1) *Supreme Court.* The Supreme Court shall have jurisdiction to review upon appeal any decision of the courts below, upon any matter of law or legal inference. The jurisdiction of the Supreme Court over "issues of fact" and "questions of fact" shall be the same exercised by it prior to the adoption of this Article, and the Court may issue any remedial writs necessary to give it general supervision and control over the proceedings of other courts.

We agree with respondent that this section of the Constitution does not contain any authority by which the Legislature could confer upon this Court original jurisdiction over the censure and removal of judges. We do not agree, however, with respondent's contention that the Constitution does not elsewhere authorize the Legislature to confer such jurisdiction upon this Court.

As the result of an amendment, proposed by Chapter 560 of the 1971 Session Laws and ratified by the people of this State of 7 November 1972, Article IV, Section 17, of the North Carolina Constitution now, in part, provides:

> (2) *Additional method of removal of Judges.* The General Assembly *shall* prescribe a procedure, in addition to impeachment and address set forth in this Section, for the removal of a Justice or Judge of the General Court of Justice for mental or physical incapacity interfering with the performance of his duties which is, or is likely to become, permanent, and for

the censure and removal of a Justice or Judge of the General Court of Justice for wilful misconduct in office, wilful and persistent failure to perform his duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. [Emphasis ours.]

The North Carolina Constitution expresses the will of the people of this State and is, therefore, the supreme law of the land. *In re: Advisory Opinion, Constitutionality of H.B. 276*, 227 N.C. 708, 43 S.E. 2d 73 (1947). Thus, it is a fundamental principle of constitutional construction that effect must be given to the intent of the people adopting the Constitution, or an amendment thereto, and that constitutional provisions should be construed in consonance with the objectives and purposes sought to be accomplished, giving due consideration to the conditions then existing. *Perry v. Stancil*, 237 N.C. 442, 75 S.E. 2d 512 (1953). It is well established that, in construing either the federal or State Constitution, what is implied is as much a part of the instrument as what is expressly stated. *See*, 16 Am. Jur. 2d, *Constitutional Law*, Section 72 (1964). Further, amendments are to be construed harmoniously with antecedent provisions, insofar as possible. *See*, 16 Am. Jur. 2d, *Constitutional Law*, Sections 68, 69 (1964).

Patently, N.C. Const., Art. IV, § 17(2), which is a positive mandate to the Legislature to provide a procedure in addition to impeachment for the removal and censure of judges and justices, does not expressly authorize the Legislature to confer original jurisdiction upon the Supreme Court over the censure and removal of judges. The article neither specifies a tribunal nor directs the creation of an authority for this purpose. It merely commands the Legislature, in its discretion, to provide a new remedy as an adjunct to the cumbersome, ancient, and impractical remedy of impeachment.

Section 17(2) of Article IV comes under the heading of "new matter." Construing this provision in accordance with the rules of construction stated above, we are of the opinion that, by clear implication, it grants to the Legislature authority to confer the challenged jurisdiction upon the Supreme Court. It seems both appropriate and in accordance with the constitutional plan that the Supreme Court, to which the Constitution gives "general

supervision and control over the proceedings of the other courts" (Art. IV, § 12(1)) should also have final jurisdiction over the censure and removal of the judges and justices. That this was the people's intent is demonstrated by the circumstances under which they ratified Section 17 of Article IV of the Constitution.

The Judicial Standards Commission Act, which defines the role of this Court in the censure and removal of judges, was enacted on 17 June 1971, nearly seventeen months prior to the ratification of the amendment to Article IV which authorizes removal of judges other than by impeachment. The effective date of the Act, however, was made contingent upon the ratification of the amendment. Ch. 560, Sec. 3, 1971 N.C. Sess. Laws. This Court has held that the General Assembly may enact a statute which is not authorized by existing provisions of the Constitution when the statute is passed in anticipation of a constitutional amendment authorizing it and provides that it shall take effect only upon ratification of such amendment. *Fullam v. Brock*, 271 N.C. 145, 155 S.E. 2d 737 (1967).

The people of this State ratified the proposed amendment to Article IV with knowledge that ratification would make effective legislation conferring upon the Supreme Court jurisdiction not elsewhere constitutionally authorized. Further, since this legislation is not inconsistent with the express language of Article IV, Section 17(2), and does not in any way enlarge or diminish the jurisdiction and powers granted to this Court as part of the General Court of Justice by Article IV, Section 12, we are of the opinion that ratification of the amendment carried with it an expression of the will of the people that the Constitution be amended so as to empower the Legislature to confer upon this Court original jurisdiction over the censure and removal of judges.

By accepting and acting upon the original jurisdiction authorized by the people and conferred by the Legislature, this Court does not usurp power constitutionally reserved to another branch of government. Thus, our exercise of jurisdiction in instant case does not violate the constitutional doctrine of separation of powers. We hold that the Judicial Standards Commission Act, Chapter 7A, Article 30, of the General Statutes, is constitutional and that, under that article, this Court is vested with jurisdiction to act in the case *sub judice*.

[2] Respondent's contention that he was denied equal protection of the law in that he was singled out for censure or removal because he was a lay judge is totally without merit. There is nothing in the record before us which suggests that the Judicial Standards Commission indulged in such conduct.

We do not deem it necessary to discuss the remaining constitutional questions presented by respondent since each of them has been answered adversely to respondent in *In re Nowell*, 293 N.C. 235, 237 S.E. 2d 246 (1977).

We now turn to the question of whether Judge Martin should be removed from office or censured, or whether the proceeding should be dismissed or remanded for further proceedings before the Commission.

The function of the Commission is to conduct hearings upon complaints filed against judges and justices, to find facts and make recommendations so as to bring before the Supreme Court the questions of whether a judge or justice should be censured or removed in order to maintain proper administration of justice, public confidence in our judicial system and the honor and integrity of judges.

[3] The recommendations of the Commission are not binding upon the Supreme Court, and this Court must consider all the evidence and exercise its independent judgment as to whether it should censure, remove, or decline to do either.

[4] The quantum of proof in proceedings before the Commission is "proof by clear and convincing evidence — a burden greater than that of proof of a preponderance of the evidence and less than that of proof beyond a reasonable doubt." *In re Nowell, supra,* at 247. *See also, In re Hardy,* 294 N.C. 90, 240 S.E. 2d 367 (1978).

Chief Justice Sharp, speaking for the Court, in *In re Nowell, supra,* defined *wilful misconduct in office* and its relationship to *conduct prejudicial to the administration of justice that brings the judicial office into disrepute* as follows:

> *Wilful misconduct in office* is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad

faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. *In re Edens, supra,* at 305, 226 S.E. 2d 5, 9. *See, Spruance v. Commission,* 13 Cal. 3d 778, 796, 532 P. 2d 1209, 1221, 119 Cal. Rptr. 841, 853; *Geiler v. Commission on Judicial Qualifications, supra* at 287, 515 P. 2d at 11, 110 Cal. Rptr. at 211; *In re Haggerty,* 257 La. 1, 39, 241 So. 2d 469, 478.

Wilful misconduct in office of necessity is *conduct prejudicial to the administration of justice that brings the judicial office into disrepute.* However, a judge may also, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. *In re Edens, supra.* Likewise, a judge may also commit indiscretions, or worse, in his private life which nonetheless brings the judicial office into disrepute. *See, e.g., In re Haggerty, supra* (judge was arrested during a police raid on a party at which, *inter alia,* prostitutes were present and obscene films were being shown.) 293 N.C. at 248-249.

The findings upon which the Commission based its recommendation for removal of Judge Martin are such that we find it necessary to consider each of them seriatim.

We are of the opinion that there was clear and convincing evidence to support the facts found by the Commission in finding (a) relating to the case of *State of North Carolina v. John Buxton Long,* No. 74CR18783, except that portion of the finding which stated that the order of dismissal was entered without the knowledge of Mr. Crotty, the Assistant District Attorney. The record shows that Mr. Crotty testified that, after ordering the matter to be held open, Judge Martin turned to the clerk later in the·day and ordered the case dismissed.

[5]   We ordered that the respondents be censured in *In re Stuhl*, 292 N.C. 379, 233 S.E. 2d 562 (1977), in *In re Edens*, 290 N.C. 299, 226 S.E. 2d 5 (1976), and in *In re Crutchfield*, 289 N.C. 597, 223 S.E. 2d 822 (1975), because the judges entered judgment outside the courtroom when court was not in session and without notice to the distict attorney. Here the respondent has elicited evidence tending to show that he was a lay judge holding his first week of court and that the case was dismissed in open court. Even so, the *ex parte* disposition of a case by a judge for reasons other than an honest appraisal of the law and facts as disclosed by the evidence and the advocacy of both parties to the proceeding amounts to conduct prejudicial to the administration of justice which in due course will bring the judicial office into disrepute. A trial judge cannot rely on his inexperience or lack of training to excuse acts which tend to bring the judicial office into disrepute. *See, In re Nowell, supra.* The arbitrary dismissal of this case, after the district attorney had refused to take a nol pros and without permitting the State to offer its evidence, was wilful misconduct in office clearly calculated to bring the court into disrepute.

[6]   The Commission's findings (c) in the case of *Rebecca Dowell v. Jesse Charles Dowell*, 76CVD726, is supported by clear and convincing evidence, and the conduct of Judge Martin in signing an order for delivery of personal property without notice to defendant or his counsel and without giving opposing party or counsel an opportunity to be heard constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. In *In re Stuhl, supra,* we stated:

> A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. 292 N.C. at 389.

[7]   We next consider finding (d) relating to the above-mentioned case of *Dowell v. Dowell.* In support of finding (d), the special counsel for the Commission offered the testimony of Richard Rudisill, attorney for defendant Dowell, who testified that the case had been continued on several occasions and that on the last occasion District Court Judge Tate had continued it to 14

February 1977. He stated that he had been attending a seminar on the weekend prior to Monday, 31 January, and his first knowledge that the case of *Dowell v. Dowell* was set for 31 January 1977 came to him on that date through a note left on the preceding Friday by his secretary. He had cases set in Catawba County in superior court for that morning, and he proceeded to Hickory for his appearance in superior court. Upon his arrival in Hickory, he called Judge Tate and requested him to contact Judge Martin and to advise him that the case had been continued to 14 February 1977.

Joe K. Byrd, Jr., attorney for Rebecca Dowell, testifying for the respondent, stated that the case was continued by Judge Tate to 31 January 1977 and was calendared on that date for trial.

District Court Judge Tate, testifying for the special prosecutor, read from an affidavit prepared by Mr. Rudisill which in effect averred that at Mr. Rudisill's request he called Judge Martin on 31 January 1977 and told him that he (Judge Tate) had continued the *Dowell* case to 14 Feburary 1977 and requested that his action be honored. However, on cross-examination Judge Tate testified that the only thing that he told Judge Martin was that he was asking for a continuance of the *Dowell* case at Mr. Rudisill's request because he (Judge Tate) had apparently led Mr. Rudisill to believe the trial would be set for another date.

Judge Martin testified that when he came to court on 31 January 1977, he was handed a calendar which showed the case of *Dowell v. Dowell* to be set for trial. He had never seen the calendar before. He received a call from Judge Tate after he had commenced the hearing of the *Dowell* case, and Judge Tate said that he was calling to ask for a continuance at Mr. Rudisill's request. Judge Tate further said that he and Mr. Rudisill had "sort of agreed to continuing to another date." Judge Martin refused to continue the case. The special prosecutor introduced his Exhibit 9, a certified copy of the district Court docket of Burke County for 31 January 1977, which showed that the case of *Dowell v. Dowell* appeared on the printed copy in someone's handwriting. Respondent introduced his Exhibit (c) which was also a copy of the 31 January docket of Burke County District Court. He also introduced his Exhibit (a), a copy of the 17 January 1977 calendar of Burke County District Court, Judge Tate presiding, which con-

tained a handwritten entry indicating that the case of *Dowell v. Dowell* was continued to 24 January 1977. Respondent's Exhibit (b) was a copy of the 24 January 1977 calendar of the Burke County District Court, Judge Tate presiding, which contained a handwritten entry indicating that the case of *Dowell v. Dowell* was continued to 31 January 1977.

The evidence presented by the special counsel for the Commission was countered by believable evidence from the respondent. We are unable to conclude that finding (d) is supported by evidence that meets the required quantum of proof in proceedings before the Commission.

[8]   We conclude that finding (e) relating to the case of *Sue Higgins Stroup v. Steven Hillard Stroup*, Case No. 76CVD834, is supported by clear and convincing evidence. We note, however, that there was evidence indicating that the case had been calendared for trial at the 4 February 1977 Session of Burke County District Court, and, when the case was not reached, counsel for both parties agreed to set the case the following week if they could get a judge to hear it. Even so, the only showing of actual notice to defendant's counsel as to the time of hearing at which judgment was entered against defendant was one hour before the trial judge began to receive evidence. This conduct did not afford the defendant Stroup or his counsel full right to be heard according to law and was, in effect, a wilful *ex parte* consideration of the proceeding without proper legal notice to defendant or his counsel. Such conduct constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. *In re Stuhl, supra.*

Except as expressly hereinabove modified, we accept and adopt as our own the Commission's findings of fact (a), (c) and (e).

[9-11]   We think it proper at this point to note that we have not previously adopted precise guidelines or standards for our determination of whether a judge or justice should be censured or whether he should be removed. Such strict guidelines should not be adopted since each case should be decided upon its own facts. *In re Hardy, supra.* Certainly where a judge's misconduct involves personal financial gain, moral turpitude or corruption, he should be removed from office. Further, if a judge knowingly and wilfully persists in indiscretions and misconduct which this Court

has declared to be, or which under the circumstances he should know to be, acts which constitute wilful misconduct in office and conduct prejudicial to the administration of justice which brings the judicial office into disrepute, he should be removed from office. Unquestionably, any act by a judge or justice which is prejudicial to the administration of justice and brings the judicial office into disrepute warrants censure.

The record before us leaves the distinct impression that Judge Martin's indiscretions to some degree resulted from lack of legal training and perhaps from bias toward either a party or his lawyer.

Public confidence in the courts requires that cases be tried by unprejudiced and unbiased judges. 46 Am. Jur. 2d, *Judges*, Section 166 (1969). A judge must avoid even the appearance of bias. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 21 L.Ed. 2d 301, 89 S.Ct. 337 (1968). By the same token, the lawyer as an officer of the court should be careful never to exploit a judge's lack of learning or known bias in favor of himself or his client.

[13]  The conduct reflected in the Commission's findings (a), (c) and (e) is strikingly similar to, but no more indiscreet than, the judicial misconduct which resulted in censure in the cases of *Crutchfield, Edens, Stuhl,* and *Hardy.* As stated by Justice Huskins in *In re Hardy, supra,* "fairness requires a similar result here." We hold that the conduct of Judge Martin as set forth in findings (a), (c) and (e) and the evidence supporting these findings do not rise to such a level as to require his removal but do merit censure. Nevertheless, this conclusion does not end our consideration of this proceeding.

[12]  The most serious charge of misconduct on the part of respondent is summarized in the Commission's finding (b) which relates to the case of the *State of North Carolina v. Charles D. Fleming,* Case No. 75CR20356. This finding of fact amounted to a finding that respondent had committed the felony of suborning perjury. G.S. 14-209, G.S. 14-210. Were we to conclude that this finding is supported by clear and convincing evidence, we would order Judge Martin's removal from office as recommended by the Commission. We briefly review the evidence relative to the Commission's finding (b).

The Commission's counsel offered the testimony of Officer George P. Herman of the Hickory Police Department who had arrested Charles D. Fleming and charged him with driving under the influence. The case was set for trial on 4 March 1975 and according to the witness Herman, Judge Martin initiated a conversation with him concerning the Fleming case on that date. The witness stated that he was first asked about how he felt about a plea of careless and reckless driving. It is not clear from his testimony as to who posed this question. Officer Herman also testified that Judge Martin then said to him, "What I want you to do when you are called to the stand is to say that you weren't present when the breathalyzer test was given." The witness replied, "No, sir; you have the wrong officer. I don't lie for anyone." The witness further testified that he then left and went directly to the office of the Chief of Police of the City of Hickory and reported this incident to him. On cross-examination, Officer Herman stated that it would not have been helpful to defendant if he had testified that he was not present when the breathalyzer test was given.

Chief of Police Melvin Tucker testified and corroborated Officer Herman's testimony that the incident was reported to him on 4 March 1975.

Joe K. Byrd, Jr., an attorney from Morganton, North Carolina, testified that he had been employed to represent Mr. Charles D. Fleming in the District Court in Hickory, North Carolina, on 4 March 1975 for the purpose of entering a plea. He arrived in the District Court in Hickory on that date just prior to a recess and during the recess he saw Judge Martin and told him that he did not know the officer who arrested his client. Judge Martin took him into a hallway near the officers' rooms where he introduced him to Officer Herman. Mr. Byrd testified that he asked Mr. Herman what his postion would be concerning a reckless driving plea if the District Attorney saw fit to consider such a plea. Officer Herman replied that it was the policy of his chief or his department not to take reductions in charges. In response to the witness's inquiry, Officer Herman stated that the breathalyzer reading on Mr. Fleming was .15 or .16. At that point, Judge Martin asked the witness, "Are you going to stipulate to that?" Judge Martin then turned to Officer Herman and said, "Do you understand you cannot testify to the breathalyzer results?"

The officer appeared to be very upset and left. Mr. Byrd further stated that he thereafter entered a plea of guilty to driving under the influence for Mr. Fleming, and before leaving the courthouse, he sought out Officer Herman and inquired of him if he (Mr. Byrd) had done anything to upset the officer. Officer Herman replied in the negative but said that the judge was trying to tell him that he could not testify to something. Attorney Byrd said that he then told the officer that, in fact, as an arresting officer he could not testify to breathalyzer results. The witness testified that he knew of no possible advantage that could have accrued to his client if Officer Herman had testified that he was not present when the breathalyzer test was given. Shortly after the witness returned to his office in Morganton, he received a telephone call from a person who identified himself as being with the Hickory Daily Record newspaper. This person said that he had a report that the judge in the Hickory District Court had tried to get an officer to testify incorrectly. After consulting with one of his senior associates, he told the caller he had no comment.

Judge Martin's testimony concerning this incident tended to corroborate the testimony of the witness Byrd.

The testimony concerning this serious charge is in sharp conflict. The testimony of officer Herman would require Judge Martin's removal if we find it to constitute proof by clear and convincing evidence. However, the testimony of Mr. Byrd squarely contradicts the officer's testimony. Thus, the testimony of these two witnesses, whose character stands unimpeached in this record, at least balances the weight of the evidence. The testimony of the respondent, an admittedly "interested" witness, corroborated the testimony of the witness Byrd. We believe that the testimony of Mr. Byrd gains some strength from the fact that the question addressed to him concerning whether he would stipulate to the breathalyzer result was a normal pretrial inquiry. On the other hand, an attempt to suborn perjury in the presence of witnesses and when no advantage would result to anyone runs counter to ordinary human conduct. We, therefore, do not find the evidence upon which the Commission's finding (b) is based to constitute proof by clear and convincing evidence.

[13]  For the reasons stated and in the exercise of our independent judgment on this record, we delcine, on this record, to remove

Judge Martin from his elected office. However, for the reasons herein stated, we conclude that the respondent's actions in the cases of *State of North Carolina v. John Buxton Long,* No. 74CR18783, *Rebecca Dowell v. Jesse Charles Dowell,* No. 76CVD726, and the case of *Sue Higgins Stroup v. Steven Hillard Stroup,* No. 76CVD834, constituted wilful misconduct in office and conduct prejudicial to the administration of justice that brings the judicial office into disrepute. For this conduct, respondent merits censure.

Now, therefore, it is ordered by the Supreme Court in conference that Judge William J. Martin be, and he is hereby, censured by this Court for the conduct specified in the Commission's findings (a), (c) and (e).