IN RE: INQUIRY CONCERNING A JUDGE, NO. 06-216 MARK H. BADGETT,
RESPONDENT

No. 144A08

(Filed 10 October 2008)

**Judges— censure and removal—willful misconduct**

> A district court judge was censured and removed from office
> after: making statements in a civil domestic violence hearing
> about nationality or ethnicity which raised at least the appear-
> ance of bias; awarding spousal support when none had been
> requested and without evidence; ordering a deputy to search
> defendant's wallet and give the dollars found therein to plaintiff;
> and willfully attempting to hide his misdeeds by making untruth-
> ful, deceptive, and inconsistent statements to an SBI agent and
> attempting to influence the recollections of a deputy clerk and
> attorney. Moreover, he had a pattern of disregard for the integrity
> of the judicial office and had been censured and suspended pre-
> viously; his willful misconduct amounted to a serious betrayal of
> the public trust.

This matter is before the Court pursuant to N.C.G.S. § 7A-376
upon a recommendation by the Judicial Standards Commission
entered 6 March 2008 that respondent Mark H. Badgett, a Judge of
the General Court of Justice, District Court Division, State of North
Carolina Judicial District Seventeen-B, be censured for conduct in
violation of Canons 1, 2A, 3A(1), and 3A(3) of the North Carolina
Code of Judicial Conduct and for conduct prejudicial to the adminis-
tration of justice that brings the judicial office into disrepute and for
willful misconduct in office in violation of N.C.G.S. § 7A-376. Heard
in the Supreme Court 9 September 2008.

> *Robert C. Montgomery, Special Counsel, for the Judicial
> Standards Commission.*

> *Randolph and Fischer, by J. Clark Fischer, for respondent.*

BRADY, Justice.

ORDER OF CENSURE AND REMOVAL

This matter is before the Court upon the 6 March 2008 recom-
mendation of the Judicial Standards Commission that respondent

**IN RE BADGETT**

[362 N.C. 482 (2008)]

Mark H. Badgett be censured as a result of his actions during and after a civil domestic violence hearing over which he presided as a district court judge in Surry County. Because of respondent's persistent acts of willful misconduct, we decline to accept the recommendation of the Judicial Standards Commission and instead order that respondent be censured and removed from office.

## PROCEDURAL BACKGROUND

In a letter dated 8 November 2006, the Judicial Standards Commission (the Commission) notified respondent that it had ordered a preliminary investigation into allegations that respondent improperly ordered Floyd Mandez Carreon to be searched and "his money and vehicle keys seized and given to the plaintiff following a civil domestic violence hearing." In a filing dated 25 July 2007, the Commission notified respondent of the commencement of disciplinary proceedings against him for allegations of "conduct prejudicial to the administration of justice that brings the judicial office into disrepute" and "willful misconduct." On 14 August 2007, respondent answered these allegations, and on 14 and 15 February 2008, the Commission heard evidence on this matter. On 6 March 2008, the Commission entered a formal recommendation to this Court that respondent be censured for his conduct arising from the Carreon case and his actions during the Commission's investigation.

## FACTUAL BACKGROUND

The Commission made the following findings of fact in its recommendation:

1. Judge Mark H. Badgett was at all times referred to herein and is now a Judge of the General Court of Justice, District Court Division, Judicial District Seventeen-B, and as such is subject to the Canons of the North Carolina Code of Judicial Conduct, the laws of the State of North Carolina, and the provisions of the oath of office for a district court judge set forth in the North Carolina General Statutes, Chapter 11.

2. On 11 February 2005, a matter entitled *Kathy Mandez Carreon v. Floyd Mandez Carreon*, 05CvD164, was commenced in the District Court of Surry County in which the plaintiff sought a domestic violence protective order against the defendant. A copy of the complaint and summons, as well as an *ex parte* domestic violence order issued 17 February 2005, were served on the defendant, Florenzo Carreon, who is also know[n] as Floyd

IN RE BADGETT

[362 N.C. 482 (2008)]

Carreon, on or about 18 February 2005 and the matter was set for hearing on 24 February 2005.

3. On 24 February 2005, the respondent was presiding in the juvenile/DSS court in Surry County when the *Carreon* matter was brought before him for hearing. Deputy Clerk of Superior Court Melissa Marion and Deputy Clerk of Superior Court Ann Gillespie were also in the courtroom, as was the courtroom bailiff, Deputy Sheriff Larry Jones. Counsel for Mrs. Carreon, Stephanie Talbert (now Goldsborough) advised the respondent that defendant Floyd Carreon had offered to consent to the entry of a domestic violence order of protection but was unwilling to admit to the commission of the acts alleged in the complaint, and denied having engaged in violence toward Mrs. Carreon. Respondent declined to enter the consent order of protection. At that point, Mr. Carreon requested the respondent to allow him time to obtain counsel; respondent told him he had no right to a court-appointed counsel but permitted Mr. Carreon to leave the courtroom for approximately an hour to see if he could find counsel to represent him. Mr. Carreon consulted with attorney Hugh Mills, but was unable to arrange for Mr. Mills to represent him on that date. Mr. Mills advised Mr. Carreon to ask for a continuance.

4. Mr. Carreon returned to the courtroom within the time which had been permitted by respondent. Respondent saw Mr. Carreon return to the courtroom and observed that Mr. Mills had briefly come into the courtroom with Mr. Carreon and had then left the courtroom. Mr. Carreon again asked for a continuance in order to retain counsel; respondent denied the request even though Ms. Talbert did not oppose the motion. The usual practice in Surry County was to routinely allow continuances of such hearings. At the hearing before the Commission, respondent testified that he denied the request because he was of the understanding that the *ex parte* order would expire after 10 days and because the allegations made by Mrs. Carreon were serious. Respondent proceeded with the hearing, requiring Mr. Carreon to proceed *pro se*. After hearing testimony by Mrs. Carreon and by Mr. Carreon, respondent indicated that he would grant the order of protection.

5. After respondent indicated he would grant the order of protection, Mrs. Carreon made a statement to respondent to the effect that she had no money, was without electric power, and needed transportation. The complaint had not sought spousal

**IN RE BADGETT**

[362 N.C. 482 (2008)]

support, but respondent inquired of Ms. Talbert as to an amount of support she thought appropriate. Ms. Talbert hesitated, inasmuch as she had neither offered evidence on the issue of spousal support or prepared to litigate the issue, and then stated that she believed an amount of $500 to $600 per month would be appropriate. Respondent then ordered Mr. Carreon to pay $150 per week as spousal support to Mrs. Carreon, to begin "forthwith," and to deliver his truck and keys to the sheriff's department by 5:00 p.m. that same day. Other than the statements by Mrs. Carreon and Ms. Talbert, there was neither evidence offered of Mrs. Carreon's reasonable needs nor Mr. Carreon's ability to pay support, and respondent made no findings to support the award.

6. Mr. Carreon attempted to object to the award of spousal support. Respondent replied that Mr. Carreon could find some way to get the money saying ". . . you people always find a way," or words to that effect. Respondent also remarked to Mr. Carreon[,] "I don't know how you treat women in Mexico, but here you don't treat them that way." The Commission finds that respondent's words were directed to Mr. Carreon's ethnicity as an Hispanic person.

7. After Mr. Carreon objected to the award of spousal support, respondent inquired as to how much money Mr. Carreon had on his person. Mr. Carreon replied that he had $140. Respondent then ordered Deputy Jones[] to search Mr. Carreon's wallet. When Deputy Jones hesitated, respondent repeated his order to him to search Mr. Carreon's wallet. Deputy Jones took possession of Mr. Carreon's wallet, counted his money, and reported to respondent that the wallet contained $140, a driver's license, and a Social Security card. Respondent allowed Ms. Talbert to obtain Mr. Carreon's Social Security account number from the Social Security card and directed Deputy Jones to turn over Mr. Carreon's cash to Mrs. Carreon.

8. At no time during the hearing did Mr. Carreon do or say anything which gave Deputy Jones, Deputy Clerk Marion, or Deputy Clerk Gillespie any reason to believe that Mr. Carreon was violent or a danger to anyone in the courtroom. The Commission specifically finds that Deputy Jones approached Mr. Carreon only after being twice ordered to do so by respondent, and not because of any concerns about Mr. Carreon's behavior or the security of the courtroom.

9. After the hearing had been concluded, Deputy Clerk Marion was so concerned about respondent's actions that she reported the events to her supervisor, Clerk of Superior Court Pam Marion. Independently of Deputy Clerk Marion, Deputy Jones also reported the incident to his supervisor at the Sheriff's department because of the unusual circumstance of being ordered to take Mr. Carreon's wallet. Similarly, after reflecting on the events, Mrs. Carreon's attorney, Ms. Talbert, also discussed the occurrence with other attorneys in her office because she was concerned that Mr. Carreon had not been treated fairly, and had been "run over," by respondent at the hearing.

10. Subsequent to the hearing, Mr. Carreon retained counsel, Mr. Mills, who filed a motion pursuant to N.C.G.S. 1A-1, Rule 60 for relief from the 24 February 2005 [order] entered by respondent. The motion was heard by respondent on 23 March 2005, and was granted. In granting the motion, respondent instructed Mr. Mills to include in the order as reasons, among others, for granting the motion that due to a language barrier, respondent had not understood that Mr. Carreon wanted an attorney, and that the failure of Mrs. Carreon's complaint to request spousal support was due to a "clerical error." However, from the evidence adduced at the hearing before the Commission, including the testimony of respondent, it is clear that respondent was aware that Mr. Carreon wished to obtain an attorney.

11. Mrs. Carreon's complaint against Mr. Carreon was ultimately dismissed after a hearing on the merits, in which Judge Key found that Mrs. Carreon had not proven the allegations contained in her complaint.

12. After respondent had received notice that the Commission had ordered an investigation into the complaint which had been filed with it alleging respondent's misconduct in connection with the Carreon matter, he attempted to discuss the 24 February 2005 hearing with Deputy Clerk Marion by asking her if she remembered the case, suggesting that Mr. Carreon had appeared violent, and requesting that she prepare a written statement. Likewise, respondent initiated a conversation with Ms. Talbert concerning the hearing on 24 February 2005, telling Ms. Talbert that he did not recall instructing Deputy Jones to take Mr. Carreon's wallet and money. When Ms. Talbert replied that she did not recall the events to be as described by respondent, respondent told her that he had a "photographic memory."

13. On 15 March 2007, Assistant Special Agent in Charge Steve Wilson of the North Carolina State Bureau of Investigation interviewed respondent about the allegations contained in the complaint relating to the 24 February 2005 hearing in the Carreon matter. Respondent denied to Agent Wilson that he had instructed Deputy Jones to search Mr. Carreon's wallet or take his money. Respondent told Agent Wilson that Mr. Carreon was known to carry a gun, that respondent suspected Mr. Carreon was a gang member based on his appearance, and that Deputy Jones had gone over to stand near Mr. Carreon because the deputy was suspicious of him and was concerned for the security of those in the courtroom. The Commission finds that this statement by respondent to Agent Wilson was untrue and was made with the intent to deceive Agent Wilson.

14. During the same interview, respondent told Agent Wilson that Deputy Jones never had possession of Mr. Carreon's wallet. Later in the interview, he told Agent Wilson that he had instructed the deputy to obtain Mr. Carreon's wallet in order to determine Mr. Carreon's true identity. The Commission finds that these statements by respondent to Agent Wilson were inconsistent, false, and misleading.

## ANALYSIS

In reviewing a recommendation from the Judicial Standards Commission, "this Court acts as a court of original jurisdiction." *In re Daisy*, 359 N.C. 622, 623, 614 S.E.2d 529, 530 (2005) (citing *In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929 (1979)). Thus, we exercise independent judgment in reviewing recommendations of the Commission and may either accept a recommendation or impose a different sanction. *In re Nowell*, 293 N.C. 235, 244, 237 S.E.2d 246, 252 (1977). Additionally, acting as a court of original jurisdiction, this Court "may adopt the Commission's findings of fact if they are supported by clear and convincing evidence, or it may make its own findings." *In re Hayes*, 353 N.C. 511, 514, 546 S.E.2d 376, 378 (2001) (citing *In re Hardy*, 294 N.C. 90, 98, 240 S.E.2d 367, 373 (1978)), *cause dismissed*, 356 N.C. 389, 584 S.E.2d 260 (2002).

After a careful review of the transcripts and exhibits in the record, we conclude that the Commission's findings of fact are supported by clear and convincing evidence. Moreover, we adopt those findings of fact as our own.

Turning now to the recommendation of the Commission, while censure would be the proper disciplinary action for respondent's conduct prejudicial to the administration of justice, we disagree that censure is the proper sanction for respondent's willful misconduct. This Court has a duty to protect the public from judicial overreaching, including "willful misconduct in office, willful and persistent failure to perform the judge's duties, habitual intemperance, conviction of a crime involving moral turpitude, or conduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C.G.S. § 7A-376(b) (2007); *see also* N.C. Const. art. IV, § 17; Code Jud. Conduct Canons 1, 2A, 3A, 2008 Ann. R. N.C. 475, 475-80. "An independent and honorable judiciary is indispensable to justice in our society . . . ." Code Jud. Conduct pmbl., 2008 Ann. R. N.C. at 475. Judges in this State and throughout the nation are given the privilege and have the duty to adjudicate the gravest situations imaginable. As such, judges must not only respect the parties involved, but have a high regard for the law itself, whether it be constitutional, statutory, administrative, or common law. ·

The relevant portions of the Code of Judicial Conduct state: "A judge should participate in establishing, maintaining, and enforcing, and should personally observe, appropriate standards of conduct to ensure that the integrity and independence of the judiciary shall be preserved." *Id.* Canon 1. "A judge should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Id.* Canon 2A. "A judge should be faithful to the law and maintain professional competence in it," *id.* Canon 3A(1), and "[a] judge should be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in the judge's official capacity," *id.* Canon 3A(3).

"Public confidence in the courts requires that cases be tried by unprejudiced and unbiased judges. A judge must avoid even the appearance of bias." *In re Martin*, 295 N.C. 291, 306, 245 S.E.2d 766, 775 (1978) (citations omitted). Respondent's statements to Mr. Carreon that "you people always find a way" and "I don't know how you treat women in Mexico, but here you don't treat them that way" raised at least the appearance of bias. A bias for or against the nationality or ethnicity of a party should play no role in the decision-making process, and respondent's statements betray this essential tenet of our law. *See* U.S. Const. amend. XIV, § 1; N.C. Const. art. I, § 19. Respondent's statements were indicative of a bias against Mr.

**IN RE BADGETT**

[362 N.C. 482 (2008)]

Carreon and thus violated Canons 1, 2A, and 3A(3) of the Code of Judicial Conduct and constituted conduct prejudicial to the administration of justice that brought the judicial office into disrepute.

Additionally, respondent misused his judicial power in two ways: (1) by awarding spousal support when none had been requested and no evidence had been taken on the issue, and (2) in ordering the bailiff, Surry County Deputy Sheriff Jones, to search Mr. Carreon's wallet and turn his money over to Mrs. Carreon. It is telling that Deputy Clerk Marion, Deputy Sheriff Jones, and Attorney Talbert recognized this abuse of power as violative of Mr. Carreon's rights. Yet respondent, the only individual in the courtroom who had sworn to justly adjudicate cases involving constitutional rights of our citizens, was the person who deprived Mr. Carreon of his rights without regard to notions of fairness and due process. While respondent argues that he should not be held to these lofty standards due to his inexperience on the bench at the time in question, this Court rejects such arguments: "A trial judge cannot rely on his inexperience or lack of training to excuse acts which tend to bring the judicial office into disrepute." *In re Martin*, 295 N.C. at 303, 245 S.E.2d at 773 (citing *In re Nowell*, 293 N.C. 235, 237 S.E.2d 246). Respondent's actions violated Canons 2A, 3A(1) and 3A(3) of the Code of Judicial Conduct and constituted conduct prejudicial to the administration of justice that brought the judicial office into disrepute.

We agree that respondent should be censured for his conduct prejudicial to the administration of justice that brought the judicial office into disrepute. His actions, in this regard, are similar in magnitude to other cases in which we have approved recommendations of censure. *See, e.g., In re Hill*, 357 N.C. 559, 591 S.E.2d 859 (2003) (verbal abuse of an attorney, sexual comments, and horseplay); *In re Stephenson*, 354 N.C. 201, 552 S.E.2d 137 (2001) (soliciting votes for reelection from the bench); *In re Brown*, 351 N.C. 601, 527 S.E.2d 651 (2000) (consistently issuing improper verdicts).

While this Court has often accepted recommendations for censure for conduct prejudicial to the administration of justice that brings the judicial office into disrepute, we have noted that willful misconduct is substantially more serious and may warrant a greater sanction in order to ensure the public trust of the judiciary. *See In re Royster*, 361 N.C. 560, 563, 648 S.E.2d 837, 840 (2007); *see also In re Peoples*, 296 N.C. at 158, 250 S.E.2d at 918 ("A judge should be removed from office and disqualified from holding

IN RE BADGETT

[362 N.C. 482 (2008)]

further judicial office only for the more serious offense of wilful misconduct in office.").

> Willful misconduct in office denotes "improper and wrong conduct of a judge acting in his official capacity done intentionally, knowingly and, generally, in bad faith. It is more than a mere error of judgment or an act of negligence. While the term would encompass conduct involving moral turpitude, *dishonesty*, or corruption, these elements need not necessarily be present."

*In re Stuhl*, 292 N.C. 379, 389, 233 S.E.2d 562, 568 (1977) (emphasis added) (quoting *In re Edens*, 290 N.C. 299, 305, 226 S.E.2d 5, 9 (1976)).

Respondent's untruthful, deceptive, and inconsistent statements to North Carolina State Bureau of Investigation Special Agent in Charge Wilson and his attempts to influence the recollections of Deputy Clerk Marion and Attorney Talbert constitute willful misconduct. Respondent was not under any compulsion to speak or make a formal statement to Special Agent Wilson. However, instead of merely relating the truth and letting the chips fall where they may, respondent willfully attempted to cover up his misdeeds from the Carreon hearing. This behavior is entirely unacceptable for a lawyer or a judge. Respondent's willful misconduct amounts to a serious betrayal of the trust the public invests in the judiciary and is similar in magnitude to other cases in which this Court has removed judges from office. *See, e.g.*, *In re Ballance*, 361 N.C. 338, 643 S.E.2d 584 (2007) (failing to file federal income tax returns); *In re Sherrill*, 328 N.C. 719, 403 S.E.2d 255 (1991) (conduct resulting in convictions for drug offenses); *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983) (attempts to influence criminal prosecutions and multiple abuses of judicial power).

Moreover, respondent has demonstrated a pattern of disregard for the integrity of the judicial office. On 7 March 2008, this Court entered an order censuring and suspending respondent for sixty days because of conduct prejudicial to the administration of justice that brought the judicial office into disrepute, willful misconduct, and willful and persistent failure to perform his judicial duties. *In re Badgett*, 362 N.C. 202, 657 S.E.2d 346 (2008). As detailed in that order, upon his election to be a district court judge, respondent sold his private practice files and leased his building to Attorney E. Clarke Dummit, but, in cases over which respondent presided and in which Mr. Dummit represented a party, respondent repeatedly failed to dis-

close his business relationship with Mr. Dummit. *Id.* at 203-04, 657 S.E.2d at 347-48. Additionally, respondent made false statements from the bench to District Attorney C. Ricky Bowman in an effort to have Mr. Bowman sign a remittal of disqualification. *Id.* at 204-05, 657 S.E.2d at 348. Respondent also created a hostile work environment for members of the district attorney's staff, complaining that they were a "burr in his side." *Id.* at 205, 657 S.E.2d at 348. Moreover, respondent was habitually rude and condescending to those appearing before him in the courtroom. *Id.* Respondent's conduct throughout his tenure as a district court judge has been fraught with disrespect for the parties appearing before him, a persistent failure to be truthful, and a disregard for the laws and ethical rules that govern the judiciary. As such, we find it essential to the protection of the people of this State to remove respondent from office and disqualify him from holding any further judicial office in North Carolina.

Therefore, it is ordered by the Supreme Court of North Carolina that respondent Mark H. Badgett be, and is hereby, censured and removed from office as Judge of the General Court of Justice, District Court Division, Judicial District Seventeen-B, Surry and Stokes County, for conduct in violation of Canons 1, 2A, 3A(1), and 3A(3) of the Code of Judicial Conduct, for conduct prejudicial to the administration of justice that brought the judicial office into disrepute, and for willful misconduct in violation of N.C.G.S. § 7A-376 (2007). It is further ordered that respondent is disqualified from holding further judicial office in the State of North Carolina and is ineligible for retirement benefits.